**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ruben Myran Johnson, | No. CV-18-00889-PHX-DWL |
| Petitioner, | **ORDER** |
| v. | <u>DEATH PENALTY CASE</u> |
| Charles L Ryan, et al., | |
| Respondents. | |

Pending before the Court is Petitioner Ruben Johnson's motion for a declaratory judgment concerning the applicability of the Arizona Victims' Bill of Rights ("AVBR") in this capital habeas proceeding. (Doc. 11.) As explained below, the motion will be denied.

**BACKGROUND**

A. <u>The Underlying Crime</u>

The following factual summary is derived from the Arizona Supreme Court's decision in *State v. Johnson*, 133 P.3d 735 (Ariz. 2006). On November 7, 2000, Johnson and a fellow gang member robbed a massage parlor. *Id.* at 738-39. During the robbery, they encountered a witness named Stephanie Smith. *Id.* Although Johnson escaped, his partner was caught by the police. *Id.* Johnson then learned, through a court employee, that Smith was scheduled to testify at his partner's upcoming preliminary hearing. *Id.* In response, Johnson pressured an acquaintance to reveal Smith's home address. *Id.*

At around 1:00 a.m. on November 15, 2000—only a few hours before the preliminary hearing was scheduled to begin—Johnson and a different gang member went

to Smith's house. *Id.* When they arrived, there were four people inside: (1) Smith, (2) Smith's four-year-old son, (3) a man named Mike Solo, and (4) a man named Leonard Justice. *Id.* The latter two were visitors who did not reside with Smith. *Id.* When Solo heard a dog barking behind the house, he went outside. *Id.* There, a black male put a gun to Solo's head, threatened to kill him, and asked who else was in the house. *Id.* Next, the gunman pushed Solo into the house and then told him to leave. *Id.* Solo hurried to his car and drove away. *Id.* In the meantime, Justice—who had seen what was happening through the back window of the house—called 911 and handed the phone to Smith so she could provide her address to the dispatcher. *Id.* When Smith and Justice saw Johnson enter the home, they both tried to hide—Justice hid in the bathroom and Smith went to a different room. *Id.* Johnson found Smith and shot her in the head, killing her. *Id.*

Johnson fled after killing Smith. *Id.* Two days later, Johnson showed a newspaper article about the murder to an acquaintance, admitted he was the unnamed suspect mentioned in the story, and explained that he'd killed Smith because she was going to testify against "his cuz or one of his homies." *Id.*

B.  The Underlying Proceedings

Johnson was indicted by an Arizona grand jury for the crimes of first-degree murder, assisting a criminal syndicate or street gang, first-degree burglary, and armed robbery. *Johnson*, 133 P.3d at 738.

In November 2001, following a jury trial, Johnson was convicted on all four counts. *Id.* "At the conclusion of the aggravation phase of the sentencing proceeding, a different jury found three aggravating factors proved beyond a reasonable doubt: (1) Johnson was previously convicted of a serious offense, (2) Johnson knowingly created a grave risk of death to another person in addition to the person murdered, (3) Johnson committed the offense in an especially heinous and depraved manner. In the penalty phase, that same jury determined that Johnson should receive the death sentence for the charge of first degree murder. The trial court sentenced him to death for the murder and to consecutive, aggravated terms on the non-capital charges." *Id.* (citations omitted).

In May 2006, the Arizona Supreme Court affirmed Johnson's conviction and sentence. *Id.* at 751.

In November 2006, the United States Supreme Court denied certiorari. *Johnson v. Arizona*, 549 U.S. 1022 (2006).

C. <u>The Arizona Victims' Bill of Rights</u>

In 1990, the Arizona voters passed a proposition adding the AVBR to the state constitution. *See* Ariz. Const., art. II, § 2.1. The AVBR enshrines, among other rights, the right to be present and to be informed of proceedings, the right to be heard at certain proceedings, the right to refuse an interview, the right to obtain prompt restitution, and the right to be informed of one's rights as a crime victim. *Id.*; *see generally* Steven J. Twist & Keelah E.G. Williams, *Twenty-Five Years of Victims' Rights in Arizona*, 47 Ariz. St. L.J. 421 (2015).

After the voters adopted the AVBR, the Arizona Legislature enacted the Victims' Rights Implementation Act, which is codified at A.R.S. §§ 13-4401 *et seq*. One of the Act's provisions, A.R.S. § 13-4433(B), regulates attempts by defense counsel to conduct victim interviews. It now provides as follows:

> The defendant, the defendant's attorney or an agent of the defendant shall only initiate contact with the victim through the prosecutor's office. The prosecutor's office shall promptly inform the victim of the defendant's request for an interview and shall advise the victim of the victim's right to refuse the interview.

A.R.S. § 13-4433(B). Similarly, Rule 39(b)(12) of the Arizona Rules of Criminal Procedure now provides that a victim has the "right to refuse an interview, deposition, or other discovery request by the defendant, the defendant's attorney, or other person acting on the defendant's behalf, and: (A) the defense must communicate requests to interview a victim to the prosecutor, not the victim; [and] (B) a victim's response to such requests must be communicated through the prosecutor . . . ."

…

…

D. <u>Earlier Arizona Capital Habeas Decisions Addressing the AVBR's Applicability</u>

1. *Sansing v. Ryan*, CV-11-1035-PHX-SRB

In June 2011, the Court (Bolton, J.) issued a scheduling order in a capital habeas case providing that "no person who is defined as a victim in this matter pursuant to Arizona law shall be contacted by anyone working with or on behalf of Petitioner or Petitioner's counsel unless said victim, through counsel for Respondents, have consented to such contact. If consent is not provided and Petitioner nonetheless believes contact is necessary, Petitioner may file a motion with the Court explaining the necessity for such contact and addressing applicability of Arizona's statutory and constitutional provisions governing the rights of victims." *Sansing v. Ryan*, CV-11-1035-PHX-SRB, Doc. 22.

In July 2011, the petitioner filed a motion for reconsideration, arguing, *inter alia*, that (1) "the federal victims' rights statute, which applies in this habeas proceeding, does not prohibit contact with victims or require Petitioner's counsel to contact victims through the Attorney General's office"; (2) "this Court does not have the authority to order the parties to a habeas proceeding to abide by state law"; and (3) the Court's approach would interfere with his right to the assistance of counsel. *Id.*, Doc. 24.

In August 2011, the Court issued an order denying the motion for reconsideration. *Id.*, Doc. 29. The Court explained that (1) it had relied upon the federal Crime Victims' Rights Act ("CVRA"), codified at 18 U.S.C. § 3771, as the basis for its prohibition against direct contact with victims; (2) the prohibition constituted a "reasonable limitation" that "furthers the rights to dignity and privacy set forth in § 3771(a)(8)" and "does not unfairly disadvantage Petitioner"; and (3) "this Court has not ruled that Arizona's victims' rights law must be followed and applied in this proceeding. Rather, the Court indicated that the parties would brief that issue if and when Petitioner seeks to interview a victim whom Respondents' counsel asserts has refused Petitioner's request for contact." *Id.*

2. *Chappell v. Ryan*, CV-15-478-PHX-SPL

In June 2015, the respondents filed a motion in a capital habeas proceeding that sought to preclude the "defense team from directly contacting any victim in this case and

directing that [it] instead initiate any such contact through counsel for Respondents." *Chappell v. Ryan*, CV-15-478-PHX-SPL, Doc. 12.

In July 2015, the Court (Logan, J.) issued an order granting the motion. *Id.*, Doc. 19. The Court explained that it "agrees with the reasoning in *Sansing*. Whether or not [A.R.S.] § 13–4433(B) directly applies to these proceedings, the mechanism it establishes furthers the goal of respecting a crime victim's dignity and privacy without unduly burdening Petitioner." *Id.*

3. *Roseberry v. Ryan*, CV-15-1507-PHX-NVW

In August 2015, the respondents filed a motion in a capital habeas proceeding that sought to preclude the "defense team from directly contacting any victim in this case and directing that [it] instead initiate any such contact through counsel for Respondents." *Roseberry v. Ryan*, CV-15-1507-PHX-NVW, Doc. 8.

In September 2015, the Court (Wake, J.) issued an order granting the motion. *Id.*, Doc. 18. The Court held that "it does not appear that A.R.S. § 13–4433(B) directly applies to these proceedings. However, the Court independently finds that the statute provides a reasonable mechanism for furthering the CVRA's goal of respecting a crime victim's dignity and privacy without unduly burdening Petitioner." *Id.*

4. *Pandeli v. Ryan*, CV-17-1657-PHX-JJT

In August 2017, the respondents filed a motion in a capital habeas proceeding asserting that, "[c]onsistent with both Arizona law and the CVRA, Respondents respectfully request that this Court enter an order precluding Pandeli's defense team from directly contacting any victim in this case and directing that the team instead initiate any such contact through the Office of the Arizona Attorney General." *Pandeli v. Ryan*, CV-17-1657-PHX-JJT, Doc. 9.

In October 2017, the Court (Tuchi, J.) issued an order granting the motion. *Id.*, Doc. 23. The Court explained that "[w]hether or not A.R.S. § 13–4433(B) directly applies to these proceedings, the Court independently finds that the statute provides a reasonable mechanism for furthering the CVRA's goal of respecting a crime victim's dignity and

privacy. Using counsel for Respondents to channel requests to contact victims, as contemplated by the CVRA itself, does not unduly burden Pandeli's access to the victims." *Id.* (citation omitted).

5. *Kiles v. Ryan*, CV-17-4092-PHX-GMS

In February 2018, the respondents filed a motion in a capital habeas proceeding asserting that, "[c]onsistent with both Arizona law and the CVRA, Respondents respectfully request that this Court enter an order precluding Kiles' defense team from directly contacting any victim in this case and directing that the team instead initiate any such contact through the Office of the Arizona Attorney General." *Kiles v. Ryan*, CV-17-4092-PHX-GMS, Doc. 12.

In April 2018, the Court (Snow, J.) issued an order granting the motion. *Id.*, Doc. 29. The Court explained that "[r]egardless of whether A.R.S. § 13–4433(B) directly applies to these proceedings, the Court finds that the statute provides a reasonable mechanism to facilitate contact between Kiles' defense team and victims that is consistent with the purposes of the CVRA. Using counsel for Respondents to channel requests to contact victims does not unduly burden Kiles' access to the victims." *Id.* (citation omitted).

**ANALYSIS**

As noted, in recent years, the usual approach of the respondents in capital habeas cases has been to file a motion—premised both on the AVBR and the CVRA—to preclude the petitioner from directly contacting victims and to require the petitioner to route any victim-interview request through the Attorney General's office. Since 2011, five different judges of this Court have issued orders granting such requests. In each instance, the Court concluded this approach was authorized by federal law—specifically, the requirement in 18 U.S.C. § 3771(a)(8) that each crime victim "be treated with fairness and with respect for the victim's dignity and privacy"—without definitively resolving the applicability of the AVBR.

In this case, Johnson filed a motion for a declaratory judgment concerning the applicability of the AVBR (*see* Doc. 11) before the respondents sought an order barring

direct contact with victims. As a threshold matter, Johnson contends that declaratory relief should be provided now, even though his attorneys haven't yet attempted to contact any individuals who might be considered victims, because his attorneys would "face[] a real threat of discipline" from the state bar if they were to initiate such contact without judicial authorization. (Doc. 11 at 5-7.)

On the merits, Johnson's primary argument is that it would be unconstitutional to apply the AVBR's no-contact rule to his attorneys in this case. (Doc. 11 at 7-15.) Among other things, he contends that such an approach would violate (1) his Sixth Amendment right "to investigation in complex capital cases," (2) his rights under the Due Process Clause of the Fourteenth Amendment, which purportedly include the right to be free from "interference with the obligations of defense counsel without adequate justification" and the "guarantee[] of ability of defense witnesses to testify freely," (3) his attorneys' First Amendment rights, and (4) his Eighth Amendment right not to be subjected to "the death penalty based on an unconstitutional process." (Doc. 11 at 7-15.) He thus seeks a declaration "that the Arizona State VBR does not apply to these federal proceedings." (Doc. 11 at 15.)

Alternatively, Johnson seeks a declaration "that even if the [A]VBR applies in these federal habeas proceedings, it does not apply to Leonard Justice or Michael Solo, whom counsel intend to interview." (Doc. 11 at 15-17.) In support of this request, Johnson argues that (1) under Arizona law, only a resident of a house that is burglarized is considered a victim of the crime of burglary, and (2) because Justice and Solo didn't live in Smith's house—they were merely visiting at the time of her murder—they don't qualify as victims. (*Id.*, citing *State v. Sarullo*, 199 P.3d 686 (Ariz. Ct. App. 2008)).

The Court will deny Johnson's motion. First, the motion fails because it is procedurally improper. Put simply, "there is no such thing as a motion for declaratory relief." *Centrifugal Acquisition Corp., Inc. v. Moon*, 2010 WL 152074, *1 (E.D. Wisc. 2010). As the Ninth Circuit has explained, "[a] request for declaratory relief is properly before the court when it is pleaded in a complaint for declaratory judgment. Requests for

declaratory judgment are not properly before the court if raised . . . by motion." *Arizona v. City of Tucson*, 761 F.3d 1005, 1010 (9th Cir. 2014). *See also Kam-Ko Bio-Pharm Trading Co., Ltd.-Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 943 (9th Cir. 2009) ("[A] party may not make a *motion* for declaratory relief, but rather, the party must bring an *action* for a declaratory judgment. Insofar as plaintiffs seek a motion for a declaratory judgment, plaintiffs' motion is denied because such a motion is inconsistent with the Federal Rules.") (citation omitted). For this reason, courts have not hesitated to deny motions requesting declaratory relief. *See, e.g., OAIC Commercial Assets, LLC v. Stonegate Village, L.P.*, 2006 WL 2788644, *3 (D. Ariz. 2006) ("It thus appears that a request for declaratory relief may not be made by 'motion.'").[1]

Second, even if Johnson were somehow able to overcome this procedural infirmity, his request for declaratory relief is premature and fails to present a justiciable controversy. *Cf. Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994) ("Jurisdiction to award declaratory relief exists only in a case of actual controversy. We have held that this requirement is identical to Article III's constitutional case or controversy requirement."). Johnson's habeas attorneys haven't attempted to request a victim interview through the Attorney General's office. It is entirely possible that such a request would be successful, in which case Johnson wouldn't suffer any of Sixth, Eighth, and Fourteenth Amendment injuries identified in his motion. The hypothetical and contingent nature of Johnson's

---

[1] *See also I.E.C. ex rel. J.R. v. Minneapolis Pub. Schs., SSD No. 1*, 970 F. Supp. 2d 917, 925 (D. Minn. 2013) ("[A] motion for declaratory judgment . . . is not a proper procedural vehicle. While Federal Rule of Civil Procedure 57 provides for a declaratory judgment *action*, which is considered a civil *suit* subject to the Federal Rules of Civil Procedure, Rule 57 does not—nor does any other provision of the Federal Rules of Civil Procedure of which the Court is aware—provide for a motion for declaratory judgment."); *Int'l Bhd. of Teamsters v. E. Conference of Teamsters*, 160 F.R.D. 452, 456 (S.D.N.Y. 1995) ("Because an action for a declaratory judgment is an ordinary civil action, a party may not make a motion for declaratory relief, but rather, the party must bring an action for a declaratory judgment."); *Barmat, Inc. v. United States*, 159 F.R.D. 578, 582 (N.D. Ga. 1994) ("Generally, declaratory judgments are sought by petition or complaint, rather than by motion, by parties to a controversy."); *Fusco v. Rome Cable Corp.*, 859 F. Supp. 624, 628 (N.D.N.Y. 1994) (a motion for declaratory relief is "procedurally flawed" because "Rule 57 does not provide a basis for making a motion; it just acknowledges the availability of declaratory judgment as a remedy. Nor does [28 U.S.C. §] 2201 provide an independent basis for making a motion; it simply creates the remedy of declaratory relief.").

asserted injuries suggests that, at least in this case's current posture, Johnson lacks standing to seek the broad declaratory relief requested in his motion and that his request is also unripe. *See, e.g., Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citations omitted) (emphases in original) ("[W]e have repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury are not sufficient.'"); *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1142 (9th Cir. 2000) (en banc) (citation omitted) (dismissing under prudential ripeness doctrine because "[Plaintiffs] have not persuaded us that any hardship will result from deferring resolution of this matter to a time when a real case arises"). Moreover, Johnson hasn't attempted to articulate why he wishes to conduct victim interviews in this case and how such interviews might support his claim for habeas relief. This amplifies the Court's ripeness concerns.

A final justiciability problem relates to whether the CVRA should be construed to preclude habeas petitioners from directly contacting victims. Many other judges of this Court have so concluded. Here, the parties have not briefed whether Justice and Solo would qualify as "crime victims" under the federal statute. *See* 18 U.S.C. § 3771(b)(2)(D); *see also United States v. Atl. States Cast Iron Pipe Co.*, 612 F. Supp. 2d 453, 458 n.5 (D.N.J. 2009) ("The CVRA . . . contains separate provisions specifying victims' rights in a federal habeas corpus proceeding arising out of a state conviction. That portion of the CVRA contains a different definition of 'crime victim.'"). Furthermore, it appears from Johnson's motion papers that his attorneys wish to contact and interview Smith's surviving family members (*see* Doc. 13 at 5)—individuals who clearly would qualify, under federal law, as "crime victims" in this proceeding. *See* 18 U.S.C. § 3771(b)(2)(D) (in a habeas proceeding, "the term 'crime victim' means the person against whom the State offense is committed or, if that person is killed or incapacitated, that person's family member or other lawful representative"). If federal law authorizes restrictions on conducting such interviews, it would be particularly inappropriate to issue a declaratory judgment concerning the constitutionality of the AVBR—such an opinion would not redress

Johnson's alleged injuries.

\* \* \*

Because Johnson's motion is being denied based on procedural defects and a lack of justiciability, the Court need not resolve whether the various hypothetical injuries identified in the motion are, in fact, cognizable under the Constitution. That said, the Court will note that Johnson's Sixth Amendment claim is difficult to reconcile with the fact that "the sixth amendment right to counsel does not apply in habeas corpus actions." *Knaubert v. Goldsmith*, 791 F.2d 722, 728 (9th Cir. 1986). Similarly, his Fourteenth Amendment theories are difficult to reconcile with the Supreme Court's holding that "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); s*ee also* Doc. 12 at 6-7 (respondent's observation that Johnson "should not need to interview anyone because he should raise only claims that he exhausted in state court, and must rely only on the record the state court considered"). Finally, Johnson's First Amendment theories overlook that attorneys are properly subject to an array of different restrictions and regulations that can have the effect of limiting their ability to obtain information—even potentially exculpatory information—from prospective witnesses. *See, e.g.*, Ariz. R. Prof. Conduct, ER 4.1(a) (a lawyer may not "make a false statement of material fact . . . to a third person," even if doing so might be helpful in obtaining information from that person); Ariz. R. Prof. Conduct, ER 4.2 (a lawyer may not communicate with a represented party, even if doing so would be tactically beneficial to client); LRCiv 39.2(b) (a lawyer must seek permission from the Court before initiating post-trial contact with a juror, even if the lawyer wishes to impeach the verdict using juror statements). Accordingly,

**IT IS ORDERED** that Johnson's motion for declaratory relief (Doc. 11) is **DENIED**.

Dated this 13th day of December, 2018.

Dominic W. Lanza
United States District Judge