**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ruben Myran Johnson,<br><br>        Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>        Respondents. | No. CV-18-00889-PHX-DWL<br><br>**ORDER** |

On February 26, 2019, the Court issued an order requiring the parties to file supplemental briefing concerning whether Johnson is entitled to a stay under *Rhines v. Weber*, 544 U.S. 269 (2005), as to Claims 14 and 26 in his habeas petition. (Doc. 29.) The Court has now reviewed the parties' supplemental briefs (Docs. 30, 31) and concludes, for the reasons discussed below, that a *Rhines* stay is not warranted.

A.    <u>Claim 14</u>

In Claim 14 of his petition, Johnson alleges that "his death sentence violates the Fifth, Sixth, Eighth, and Fourteenth Amendments because the trial court erroneously instructed his jury that if they did not impose a death sentence, Johnson might be released on parole." (Doc. 18 at 258.) He identifies *Lynch v. Arizona*, 136 S. Ct. 1818 (2016), as the source of new law supporting this claim.

The Court concludes the Arizona courts wouldn't allow Johnson to pursue a *Lynch* claim in a future proceeding because Arizona Rule of Civil Procedure 32.1(g) would be deemed inapplicable. Thus, Johnson's *Lynch* claim constitutes a technically exhausted

claim that can't give rise to a *Rhines* stay.

First, Arizona courts have construed Rule 32.1(g) as applying only to cases that represent a "transformative event" and a "clear" or "sharp break" from the past. *State v. Shrum*, 203 P.3d 1175, 1178 (Ariz. 2009); *State v. Slemmer*, 823 P.2d 41, 49 (Ariz. 1991). *Lynch* doesn't meet these standards. It didn't overrule a prior Supreme Court precedent or create a new rule—it merely applied a 22-year-old precedent (*Simmons v. South Carolina*, 512 U.S. 154 (1994)) to Arizona's sentencing practices. For this reason, several other judges have already concluded that *Lynch* doesn't qualify as a significant change in the law under Rule 32.1(g). *See, e.g., Boggs v. Ryan*, 2017 WL 67522, *6 (D. Ariz. 2017) ("*Lynch* . . . [is] not [a] significant change[] in the law for purposes of Rule 32.1(g)."); *Garcia v. Ryan*, 2017 WL 1550419, *3 (D. Ariz. 2017) ("*Lynch* did not transform Arizona law. The holding does not constitute a significant change in law for purposes of Rule 32.1(g)."); *Garza v. Ryan*, 2017 WL 105983, *3 (D. Ariz. 2017) ("*Lynch* does not represent a change in the law. It simply applies existing law to an Arizona case. It is not a transformative event of the kind described by Arizona courts in interpreting Rule 32.1(g)."). The Court agrees with those decisions and reaches the same conclusion here.

Second, Arizona courts have further recognized that, even if a case does represent a "significant change in the law," Rule 32.1(g) only applies if the rule announced in the case is retroactively applicable to cases that were final at the time of the announcement. *State v. Poblete*, 260 P.3d 1102, 1105 (Ariz. Ct. App. 2011). *See also* Doc. 31 at 2 (Johnson's acknowledgement that "the Arizona appellate courts treat the question of whether there is a significant change in the law as distinct from the separate question whether the change should be applied retroactively"). This is a difficult standard to meet. As the U.S. Supreme Court has explained, "a new constitutional rule of criminal procedure does not apply, as a general matter, to convictions that were final when the new rule was announced. [We have] recognized, however, two categories of rules that are not subject to its general retroactivity bar. First, courts must give retroactive effect to new substantive rules of constitutional law. . . . Second, courts must give retroactive effect to new 'watershed rules of criminal

procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Montgomery v. Louisiana*, 136 S. Ct. 718, 728 (2016) (citations and internal quotation marks omitted). *See also Slemmer*, 823 P.2d at 49 ("[W]e adopt and apply the federal retroactivity analysis . . . .").

These principles supply an independent reason why Johnson wouldn't be able to assert a *Lynch* claim in a future state-court proceeding under Rule 32.1(g). *Lynch* didn't announce a new rule of substantive law and the procedural rule it applied doesn't amount to a "watershed" rule of criminal procedure. *See, e.g., Leavitt v. Arave*, 383 F.3d 809, 825-26 (9th Cir. 2004) ("The 'watershed' exception does not apply to every rule that promotes accuracy and guarantees due process. Indeed, [since 1989], the Supreme Court has never found that any rule falls within the 'watershed' exception despite at least eleven opportunities to do so.") (citations omitted). *Cf. Schriro v. Summerlin*, 542 U.S. 348, 355-58 (2004) (concluding the rule announced in *Ring* was not a watershed rule of criminal procedure). Thus, *Lynch* isn't retroactively applicable. *See generally Garcia*, 2017 WL 1550419 at *3 ("*Lynch* would not apply retroactively. . . . [T]he Supreme Court [has] rejected the argument that *Simmons* represented a 'watershed' rule of criminal procedure that would apply retroactively. Like *Simmons*, *Lynch* is procedural and nonretroactive.") (citation omitted).[1]

## B.    Claim 26

In Claim 26 of his petition, Johnson alleges that his "death sentence violates the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution because his trial and appellate counsel conceded Johnson's guilt and death-eligibility." (Doc. 18 at 409.) He identifies *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018), as the source of new law supporting this claim.

The Court concludes the Arizona courts wouldn't allow Johnson to pursue a *McCoy* claim in a future proceeding because Arizona Rule of Civil Procedure 32.1(g) would be deemed inapplicable. Thus, Johnson's *McCoy* claim constitutes a technically exhausted

---

[1]    These conclusions make it unnecessary to resolve the parties' arguments concerning whether *Lynch* claims are subject to harmless-error review.

claim that can't give rise to a *Rhines* stay.

The Court will note that the question whether *McCoy* represents a "significant change in the law" is closer than the question whether *Lynch* represents such a change. In his dissent, Justice Alito argued that the *McCoy* majority had adopted a "newly discovered constitutional right" that "made its first appearance today." 138 S.Ct. at 1514, 1518. Nevertheless, *McCoy* didn't announce a watershed rule of criminal procedure, so it doesn't apply retroactively.[2]

C.    <u>Appointment Of Counsel</u>

Johnson has asked the Court to authorize his federal habeas counsel to represent him in state court. The Criminal Justice Act provides for appointed counsel to represent their client in "other appropriate motions and procedures." 18 U.S.C. § 3599(e). In *Harbison v. Bell*, 556 U.S. 180 (2009), the Supreme Court noted that "a district court may determine on a case-by-case basis that it is appropriate for federal counsel to exhaust a claim in the course of her federal habeas representation." *Id.* at 190 n.7.

As noted above, Johnson isn't entitled to a *Rhines* stay. Based on that determination, together with the *Harbison* Court's discussion of the parameters of § 3599(e), the Court concludes it would be inappropriate and unnecessary to authorize Johnson's federal habeas counsel to represent him in state court.

Accordingly, **IT IS ORDERED** that Johnson's motion for a *Rhines* stay (Doc. 23) is **denied**.

Dated this 15th day of March, 2019.

_____
Dominic W. Lanza
United States District Judge

---
[2]    This conclusion makes it unnecessary to resolve the parties' arguments concerning whether Johnson actually objected to his attorneys' alleged concessions of guilt, as required by *McCoy*.