RENE L. VALLADARES
Federal Public Defender
Nevada State Bar No. 11479
BRAD D. LEVENSON
Assistant Federal Public Defender
Texas State Bar No. 24073411
STACY M. NEWMAN
Assistant Federal Public Defender
Nevada State Bar No. 14245
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577
(702) 388-5819 (fax)
brad_levenson@fd.org
stacy_newman@fd.org

Attorneys for Petitioner

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

Ruben Myran Johnson,

   Petitioner,

  v.

Kevin Curran, et al.,

   Respondents.

Case No. CV-18-00889-PHX-MTL

**NOTICE OF REQUEST FOR EVIDENTIARY DEVELOPMENT**

**(Death Penalty Case)**

# TABLE OF CONTENTS

I.        INTRODUCTION ...................................................................................1

II.      FACTUAL DEVELOPMENT IN HABEAS CORPUS PROCEEDINGS....1

     A.    This Court May Grant Discovery Under Habeas Rule 6. ............ 1
     B.    This Court May Expand The Record Under Habeas Rule 7.................................................................................................... 3
     C.    This Court May Grant an Evidentiary Hearing Under Habeas Rule 8. ...................................................................... 5

          1.    Procedural default. ............................................................ 5
          2.    Merits. .................................................................................. 6

     D.    Diligence Requirement Under § 2254(e)(2). ................................ 8

III.     CLAIMS FOR WHICH JOHNSON SEEKS EVIDENTIARY DEVELOPMENT ............................................................................ 11

**Claim 1: Due to ineffective assistance of trial counsel, the jury never learned of alternative explanations for Stephanie Smith's death and law enforcement's failure to investigate those lead.................................................... 11**

          1.    Discovery (Rule 6)............................................................ 11
          2.    Expansion of the Record (Rule 7).................................. 14
          3.    Evidentiary Hearing (Rule 8) ........................................ 15

**Claim 2: Trial counsel were ineffective for failing to object and offer rebuttal evidence against impermissibly suggestive photo arrays and unreliable cross-racial identifications................................ .......................................... 16**

          1.    Discovery (Rule 6)............................................................ 16
          2.    Expansion of the Record (Rule 7).................................. 17
          3.    Evidentiary Hearing (Rule 8) ........................................ 18

**Claim 3: Repeated instances of prosecutorial misconduct denied Johnson due process, a fair trial, and a reliable sentencing ........................................ 19**

          1.    Discovery (Rule 6)............................................................ 19
          2.    Expansion of the Record (Rule 7).................................. 21
          3.    Evidentiary Hearing (Rule 8) ........................................ 22

**Claim 4: Trial counsel were ineffective for failing to independently investigate and challenge the state's guilt phase case. ............................................. 22**

1.    Discovery (Rule 6)..............................................................23
2.    Expansion of the Record (Rule 7)..................................25
3.    Evidentiary Hearing (Rule 8) ...........................................27

**Claim 5: Johnson's trial counsel failed to render effective assistance during the trial-phase voir dire**.......................................................27

1.    Discovery (Rule 6)..............................................................28
2.    Evidentiary Hearing (Rule 8) ...........................................28

**Claim 8: Johnson was denied a fair trial because biased jurors sentenced him to death**..............................................................................29

1.    Expansion of the Record (Rule 7).....................................29

**Claim 9(B): Johnson was denied a fair trial and impartial jury at the sentencing phase due to the lack of Black prospective jurors on the venire.** ..........30

1.    Discovery (Rule 6)..............................................................31

**Claim 10: Trial counsel were ineffective for failing to request an instruction that mere gang membership is not a crime**..............................................31

1.    Discovery (Rule 6)..............................................................32
2.    Evidentiary Hearing (Rule 8) ...........................................32

**Claim 11: Arizona's definitions of "criminal street gang" and "criminal street gang member" are void for vagueness**...............................................32

1.    Discovery (Rule 6)..............................................................33
2.    Expansion of the Record (Rule 7)..................................33
3.    Evidentiary Hearing (Rule 8) ...........................................33

**Claim 12: A combination of trial court error and attorney ineffectiveness led the jury to hear prejudicial and unreliable character evidence throughout Johnson's proceedings**.................................................................34

1.    Discovery (Rule 6)..............................................................34
2.    Evidentiary Hearing (Rule 8) ...........................................35

**Claim 13: Trial Counsel were ineffective for failing to move to preclude rap lyrics, attributed to Johnson and co-defendant Jarvis Ross, on First Amendment and Confrontation Clause grounds, and the trial court erred in not excluding the lyrics based on offered evidentiary objections**...........................35

1.    Discovery (Rule 6)..............................................................35
2.    Expansion of the Record (Rule 7)..................................36

        3.        Evidentiary Hearing (Rule 8) ..................................................... 37

**Claim 14: An improper jury instruction likely caused the jury to vote for death to ensure Johnson was never released from custody** ............................... 37

        1.        Discovery (Rule 6) ...................................................................... 37
        2.        Expansion of the Record (Rule 7) ............................................. 37
        3.        Evidentiary Hearing (Rule 8) ..................................................... 38

**Claim 15: Johnson was denied conflict-free counsel at the sentencing phase of the trial and at state postconviction** ................................................................ 38

        1.        Discovery (Rule 6) ...................................................................... 38
        2.        Evidentiary Hearing (Rule 8) ..................................................... 39

**Claim 16: Trial counsel were ineffective at the penalty phase of Johnson's trial** ................................................................................................................... 40

        1.        Discovery (Rule 6) ...................................................................... 40
        2.        Expansion of the Record (Rule 7) ............................................. 41
        3.        Evidentiary Hearing (Rule 8) ..................................................... 43

**Claim 17: Counsel were ineffective for failing to object to statutorily unauthorized victim impact testimony of Smith's mother-in-law, Sandra Plinski** .............................................................................................................. 44

        1.        Discovery (Rule 6) ...................................................................... 44
        2.        Evidentiary Hearing (Rule 8) ..................................................... 45

**Claim 19: The imposition of the death penalty on persons twenty-one and younger at the time of the offense constitutes cruel and unusual punishment** ...... 45

        1.        Discovery (Rule 6) ...................................................................... 45
        2.        Expansion of the Record (Rule 7) ............................................. 46
        3.        Evidentiary Hearing (Rule 8) ..................................................... 46

**Claim 20: Trial counsel were ineffective for failing to timely object, move to strike, move for a mistrial, and seek a curative instruction when evidence of other homicide charges and speculation that Johnson's self-inflicted scars marked prior assaults were introduced during the penalty phase.** .......................... 47

        1.        Discovery (Rule 6) ...................................................................... 47
        2.        Expansion of the Record (Rule 7) ............................................. 47
        3.        Evidentiary Hearing (Rule 8) ..................................................... 48

**Claim 21: Trial counsel erred in not seeking a mistrial after arguing the grand jury indictment was deficient because the grand jury did not consider any of the aggravating circumstances**............................................................... 48

    1.    Discovery (Rule 6)...................................................... 48

    2.    Evidentiary Hearing (Rule 8) ..................................... 49

**Claim 25: Appellate counsel was ineffective.** ................................ 49

    1.    Discovery (Rule 6)...................................................... 49

    1.    Evidentiary Hearing (Rule 8) ..................................... 50

**Claim 26: Trial counsel erred by conceding Johnson's death eligibility in violation of *McCoy v. Louisiana*. Direct appeal counsel erred by conceding Johnson's guilt, also in violation of *McCoy*.** ................................ 50

    1.    Discovery (Rule 6)...................................................... 50

    2.    Expansion of the Record (Rule 7)............................... 51

    3.    Evidentiary Hearing (Rule 8) ..................................... 51

**Claim 27: Trial counsel were ineffective for failing to request an instruction to caution the jury that multiple witnesses' testimony should be examined with greater caution due to receipt of government benefits** ............................ 51

    1.    Discovery (Rule 6)...................................................... 52

    2.    Expansion of the Record (Rule 7)............................... 52

    3.    Evidentiary Hearing (Rule 8) ..................................... 52

**Claim 28: Trial counsel were ineffective for failing to challenge the handwriting analysis offered by the prosecution**............................................. 53

    1.    Discovery (Rule 6)...................................................... 53

    2.    Expansion of the Record (Rule 7)............................... 53

    3.    Evidentiary Hearing (Rule 8) ..................................... 54

**Claim 29: Significant portions of the trial proceedings were not recorded**.......... 54

    1.    Discovery (Rule 6)...................................................... 54

    2.    Evidentiary Hearing (Rule 8) ..................................... 55

**Claim 30 (D) & (E):  Arizona's capital sentencing scheme is unconstitutional.** ....... 55

    1.    Discovery (Rule 6)...................................................... 55

**Claim 37: Executing Johnson after more than fifteen years on death row is unconstitutional**................................................................ 56

      1.      Discovery (Rule 6)............................................................................56

      2.      Evidentiary Hearing (Rule 8) ..........................................................57

**IV. CONCLUSION** ................................................................................................**57**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

## I.   INTRODUCTION

Pursuant to this Court's Orders dated March 30, 2018 (ECF No. 6) and August 26, 2019 (ECF No. 42), and the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules"), Petitioner Ruben Myran Johnson hereby files this Notice of Request for Evidentiary Development ("Notice"), seeking discovery pursuant to Habeas Rule 6, expansion of the record pursuant to Habeas Rule 7, and an evidentiary hearing pursuant to Habeas Rule 8.

## II.   FACTUAL DEVELOPMENT IN HABEAS CORPUS PROCEEDINGS

The Supreme Court has recognized that, while the discovery provisions under the Federal Rules of Civil Procedure do not apply to habeas proceedings, the All Writs Act, 28 U.S.C. § 1651, gives "federal courts the power to 'fashion appropriate modes of procedure,' including discovery, to dispose of habeas petitions 'as law and justice require.'" *Bracy v. Gramley*, 520 U.S. 899, 904 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 299 (1969)). In light of this, the Supreme Court promulgated and Congress adopted the Rules Governing Section 2254 Cases. Under these rules, a federal habeas petitioner may develop the evidentiary record by conducting discovery under Habeas Rule 6, expanding the record under Habeas Rule 7, or obtaining an evidentiary hearing under Habeas Rule 8.

### A.   This Court May Grant Discovery Under Habeas Rule 6.

Under Habeas Rule 6, a court "may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure . . . ." Good cause is shown "where

1

specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908–09 (quoting *Harris*, 394 U.S. at 300). While specific allegations are required, Petitioners need not fully prove a claim—even a "quite speculative" claim may be specific enough to warrant discovery. *See id.* at 905, 909–10. Because discovery will often be necessary to fully develop a claim, this Court may not deny discovery solely on the basis that the claim is meritless. *Id.* Rather, it must be clear that the claim will be meritless even after discovery. *Id.* Once sufficiently specific allegations are presented, "it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Id.*

A petitioner's entitlement to discovery should not be limited on the basis of 28 U.S.C. § 2254(e)(2) or § 2254(d). Section 2254(e)(2) should not serve as a basis to deny discovery because, without conducting discovery, this Court cannot know whether the petitioner has acted with the diligence required by § 2254(e)(2). Further, § 2254(e)(2) does not bar consideration of evidence when the evidence is used to establish cause to excuse a procedural default. *Jones v. Shinn*, __ F.3d __, 2019 WL 6442931, *7 (9th Cir. Nov. 29, 2019); *Dickens v. Ryan*, 740 F.3d 1302, 1321–22 (9th Cir. 2014) (en banc). Additionally, § 2254(d) in conjunction with the rule established in *Cullen v. Pinholster*, 563 U.S. 170 (2011), should not serve as a basis to deny discovery. While *Pinholster* limited the record this Court may consider in determining whether an adjudication was contrary to or an unreasonable application of clearly established federal law, 563 U.S. at 181–82, it did not limit this Court's ability to consider evidence for other purposes. *See*

2

*Dickens*, 740 F.3d at 1321–22 (holding *Pinholster* does not affect a court's ability to consider new evidence where petitioner successfully shows cause to overcome procedural default). Thus, once a petitioner has met the standard for good cause, he should be entitled to discovery.

### B.      This Court May Expand The Record Under Habeas Rule 7.

Pursuant to Rule 7, a court may allow a party to supplement the state-court record with materials relevant to the court's resolution of the habeas corpus petition. *See* Rules Governing Section 2254 Cases in the United States District Courts Rule 7 ("If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition."). To submit additional materials relating to the petition, the submitting party only needs to show the materials are relevant. *See* Adv. Comm. Notes on Habeas Rule 7 ("The record may be expanded to include additional material relevant to the merits of the petition."); *see also Loza v. Mitchell,* No. C-1-98-287, 2002 WL 31409881, at *1 (S.D. Ohio July 17, 2002) (holding "expansion pursuant to Rule 7, under the language of that rule, has only a relevancy limitation"). Expanding the record helps avoid the need for an evidentiary hearing, and thus, courts have wide discretion to permit expansion. *See Blackledge v. Allison*, 431 U.S. 63, 81–82 (1977).

A petitioner should not be precluded from expanding the record by application of § 2254(e)(2). In fact, courts have found that § 2254(e)(2) does not apply to expanding the record under Habeas Rule 7 because Congress, in drafting the language of § 2254(e)(2), restricted only evidentiary hearings, and "expansion of the record . . . is not the equivalent of an evidentiary hearing under § 2254(e)(2)."*Ashworth v. Bagley*, No. C-2-

00-1322, 2002 WL 485003, at *12 (S. D. Ohio Mar. 28, 2002).  "If Congress intended to restrict federal habeas review entirely to the state court record unless the requirements of § 2254(e)(2) are met . . . it could have done so explicitly." *Id.* at *11. Because Congress elected to modify only evidentiary hearings in § 2254(e)(2), there is no reason to believe Congress meant to modify expanding the record under Habeas Rule 7. *Id.* at *12; *see also Quintero v. Bell*, No. 3:09-cv-00106, 2012 WL 6188468, at *3 (M.D. Tenn. Dec. 12, 2012) (declining to adopt limitations in § 2254(e)(2) to motions under Rule 7); *Ruine v. Walsh*, No. 00 Civ. 3798(RWS), 2005 WL 1668855, at *6 n.4 (S.D.N.Y. July 14, 2005) (same).

While the Ninth Circuit in *Cooper-Smith v. Palmateer* held that § 2254(e)(2) constrains efforts to expand the record, Johnson respectfully submits that the Ninth Circuit's decision was wrongly decided. 397 F.3d 1236, 1241 (9th Cir. 2005) overruled on other grounds by *Daire v. Lattimore*, 812 F.3d 766, 768 (9th Cir. 2016) (en banc). *Cooper-Smith* relied on dicta from *Holland v. Jackson*, 542 U.S. 649, 652–53 (2004) (per curiam), and ignored an important purpose of Habeas Rule 7: allowing expansion of the record in determining whether an evidentiary hearing is warranted. *See* Adv. Comm. Notes on Habeas Rule 7 ("The purpose is to enable the judge to dispose of some habeas petitions not dismissed on the pleadings, without the time and expense required for an evidentiary hearing."). Thus, provided the petitioner has established the requested records are relevant, he should be entitled to have the record expanded.

4

### C.   This Court May Grant an Evidentiary Hearing Under Habeas Rule 8.

Habeas Rule 8 grants a court discretion to order an evidentiary hearing. *See* Rule 8 of the Rules Governing Section 2254 Cases ("If a petition is not dismissed, the judge must review the answer, any transcripts and records of state-court proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted."). An evidentiary hearing may be ordered both to determine if a petitioner can establish good cause and prejudice to overcome a procedural default and to develop the merits of a claim.

### 1.  Procedural default.

The Ninth Circuit has regularly recognized the need to have an evidentiary hearing to determine if a petitioner can establish good cause and prejudice to overcome a procedural default. *See McClesky v. Zant*, 499 U.S. 467, 494 (1991) (acknowledging need for evidentiary hearing if meeting burden of cause and prejudice comes down to factual matters); *Loveland v. Hatcher*, 231 F.3d 640, 645 (9th Cir. 2000) (remanding for evidentiary hearing to determine whether to excuse procedural default).

In particular, the Ninth Circuit has recognized the importance of an evidentiary hearing to establish cause and prejudice in light of the Supreme Court's decision in *Martinez v. Ryan,* 566 U.S. 1 (2012), which found that procedural default of an ineffective assistance of trial counsel claim will not bar federal habeas review if state postconviction counsel was ineffective—noting that "determining whether there has been ineffective assistance of counsel often requires factual development in a collateral

proceeding." *Detrich v. Ryan*, 740 F.3d 1237, 1246 (9th Cir. 2013). Thus, "[f]or procedurally defaulted claims, to which *Martinez* is applicable, the district court should allow discovery and hold an evidentiary hearing where appropriate . . . ." *Id.*, *see also Dickens*, 740 F.3d at 1321 (holding "a district court may take evidence to the extent necessary to determine whether the petitioner's claim of ineffective assistance of trial counsel is substantial under *Martinez*"). Accordingly, hearings addressing the existence of cause and prejudice are not subject to the restrictions of § 2254(e). *See Dickens*, 740 F.3d at 1321–22.

In Johnson's case, he can show cause and prejudice based on state postconviction counsel's ineffectiveness. As discussed in the Reply, state postconviction counsel's performance was clearly deficient, and thus, Johnson can establish cause under *Martinez* to excuse allegations of procedural default. Additionally, Johnson can show cause and prejudice to excuse any default based on the State's suppression of evidence. *See Banks v. Dretke*, 540 U.S. 668, 695–96 (2004); *Strickler v. Greene*, 527 U.S. 263, 283–88 (1999).

## 2.  Merits.

The Ninth Circuit has also recognized the right to an evidentiary hearing to develop the merits of a claim. *See Insyxiengmay v. Morgan*, 403 F.3d 657, 670 (9th Cir. 2005). Before AEDPA was passed, the Supreme Court listed six circumstances that would entitle a petitioner to a hearing in federal court:

> (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not supported by the record as a whole; (3) the fact-finding

6

> procedure employed by the state court was not adequate to
> afford a full and fair-hearing; (4) there is a substantial
> allegation of newly discovered evidence; (5) the material
> facts were not adequately developed at the state-court
> hearing; or (6) for any reason it appears that the state trier of
> fact did not afford the habeas applicant a full and fair hearing.

*Townsend v. Sain*, 372 U.S. 293, 313 (1963), overruled by *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). AEDPA modified this standard slightly by barring evidentiary hearings if "the applicant has failed to develop the factual basis of a claim in state court proceedings . . . ." 28 U.S.C. § 2254(e)(2). The Ninth Circuit has noted that, in most cases, if a petitioner has not failed to develop the factual basis of a claim, he will have satisfied one of the *Townsend* factors. *Insyxiengmay*, 403 F.3d at 670. Taken together, if a petitioner can show he meets one of the *Townsend* factors and has not failed to develop the factual basis of his claim, "an evidentiary hearing on a habeas corpus petition is required whenever petitioner's allegations, if proved, would entitle him to relief." *Id.* (quoting *Turner v. Marshall*, 63 F.3d 807, 815 (9th Cir. 1995)).

To the extent a petitioner's failure to develop the factual basis of the claim is a result of the ineffectiveness of petitioner's attorney, this failure should not preclude the petitioner from obtaining an evidentiary hearing in light of *Martinez*, 566 U.S. at 14. As the *Martinez* Court noted, ineffective assistance of counsel claims must be raised by initial state postconviction counsel. *See id.* at 10–12. Attributing the errors of postconviction counsel to the petitioner effectively prevents the petitioner from raising claims of ineffective assistance of trial counsel, and thus may result in meritorious claims never being heard by any court. *Id.* at 11–12. Thus, although *Williams v. Taylor*, 529 U.S.

7

420, 437–40 (2000), held that a petitioner's counsel's failure to be diligent is attributable to petitioner, the aspect of *Williams* that holds a petitioner accountable for his attorney's errors has been displaced by *Martinez*. Similarly, while *Coleman v. Thompson*, 501 U.S. 722 (1991) attributes the faults of initial postconviction counsel to petitioner, as discussed above, *Martinez* holds that the faults of initial postconviction counsel may not be attributable to petitioner. *See Martinez*, 566 U.S. at 14. Accordingly, both *Williams* and *Coleman* are overruled by *Martinez* insofar as they attribute the faults of postconviction counsel to petitioner. If ineffective assistance of postconviction counsel may establish cause for failure to raise a claim, then by extension, it must also establish that a failure to develop the factual basis of a claim was not the petitioner's fault. Jones v. Shinn, 2019 WL 6442931.

In Johnson's case, this Court should not find he has failed to develop the factual basis of a claim in state court due to the failures of state postconviction counsel. Insofar as prior counsel failed to develop this evidence, they were ineffective, which cannot be attributable to Johnson under *Martinez*, 566 U.S. at 14. Thus, as further discussed below, § 2254(e)(2) should not bar expansion of the record for claims where the *Martinez* is applicable.

### D.    Diligence Requirement Under § 2254(e)(2).

Johnson diligently sought to develop the factual bases of the claims set forth below in state court. Therefore, even assuming that the strictures of § 2254(e)(2) properly govern both expansion of the record and evidentiary hearings, the Court should grant Johnson's requests under Habeas Rules 7 and 8.

"While 'diligence' has not been precisely defined in this context, the Supreme Court has advised that '[d]iligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law.'" *Libberton v. Ryan*, 583 F.3d 1147, 1165 (9th Cir. 2009) (quoting *Williams*, 529 U.S. at 437). Further, as the Court explained in *Williams*, the question "is not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts." 529 U.S. at 435; *see also Libberton*, 583 F.3d at 1165 (finding that petitioner showed diligence by requesting a state-court evidentiary hearing and funding for investigation and that the district court had wrongly focused on whether the petitioner could have discovered the new evidence during state-court proceedings). Interference by the State in developing the facts in state court does not preclude a petitioner from developing the facts in federal court. *See Williams*, 529 U.S. at 443.

The mere existence of additional information in federal habeas that could have been found in state court does not mean the petitioner was not diligent. *Id.* at 435; *Libberton*, 583 F.3d at 1165; *see also Roberts v. Dretke*, 356 F.3d 632, 639 (5th Cir. 2004) (explaining that diligence does not mean that if the evidence was theoretically available, prior counsel should have acquired it). A petitioner is only required to make a "reasonable attempt, in light of the information available at the time;" diligence "does not depend . . . upon whether those efforts could have been successful." *Williams*, 529 U.S. at 435; *see also Roberts*, 356 F.3d at 639 (stating that if there is reason for prior counsel to believe that time and labor intensive discovery efforts will not bear fruit, discovery of this type of evidence "is beyond the requirements of due diligence").

9

The state-court record reflects that Johnson satisfied the diligence requirement in §
2254(e)(2). Through counsel, Johnson persistently sought the appointment of and
approval for investigative and mitigation services, and sought the assistance of experts.
Moreover, when Johnson filed his postconviction petition, he submitted hundreds of
pages of extra-record exhibits and requested an evidentiary hearing. Finally, after the
postconviction court denied relief, Johnson filed a petition for review in the Arizona
Supreme Court and again filed hundreds of pages of supporting evidence. On this record,
Respondents cannot reasonably challenge Johnson's diligence in attempting to develop
his claims in the state courts.

Johnson further seeks evidentiary development to help demonstrate cause and
prejudice to overcome the default of several claims. As discussed above, the diligence
requirement in § 2254(e)(2) does not apply to *Martinez* issues. *See Jones v. Shinn,* 2019
WL 6442931, at *7; *Dickens*, 740 F.3d at 1320-22. Johnson cannot have lacked diligence
in developing facts relevant to issues—cause and prejudice under *Martinez*—that had no
bearing on his state-court proceedings.

Therefore, Johnson was diligent in state court and any failure to develop the facts of his
claims is attributable to the State, to the state court's failure to grant him an evidentiary
hearing on all colorable claims, or to the ineffective assistance of state postconviction
counsel. The Court should therefore grant Johnson's requests for discovery, expansion of
the record, and an evidentiary hearing.

### III.   CLAIMS FOR WHICH JOHNSON SEEKS EVIDENTIARY DEVELOPMENT

Johnson is entitled to evidentiary development on his claims under Habeas Rules 6, 7, and 8, to establish both that he can overcome any procedural defenses and that he is entitled to relief on the merits of his claims.

**Claim 1:**   **Due to ineffective assistance of trial counsel, the jury never learned of alternative explanations for Stephanie Smith's death and law enforcement's failure to investigate those leads.**

Johnson requests discovery, expansion of the record, and an evidentiary hearing in support of his Claim that trial counsel provided ineffective assistance by failing to present evidence of alternative explanations for Stephanie Smith's death. This Claim was procedurally defaulted, but the ineffective assistance of counsel that Johnson received during his state postconviction proceedings in failing to present this substantial Claim provides cause for the default and establishes prejudice. *See Martinez*, 566 U.S. at 17.

#### 1.   <u>Discovery (Rule 6)</u>

Johnson requires the assistance of the Court in obtaining information in support of his Claim. He has made credible allegations of a constitutional violation and thus has shown good cause for this request. *See Bracy*, 520 U.S. at 904, 908–09. Accordingly, he moves for court orders for the following requests.

**Deposition of Rick "Magic" Neuman:** Rick Neuman was an associate of Smith, an ex-convict, and known for his connections with the Aryan Brotherhood, motorcycle gangs, and prison gangs. Neuman can speak to Smith's ties to white supremacist groups.

11

**Deposition of David Smith:** David Smith was Stephanie Smith's husband at the time of her death, and was believed to have ties to White Nationalists and the Aryan Brotherhood. David Smith can speak to both his and Smith's ties to White Nationalists and the Aryan Brotherhood. He can address his abusive relationship with Smith and his repeated threats to kill her.

**Deposition of Leonard Justice:** Leonard Justice worked with Stephanie Smith illegally trafficking persons from Mexico into the United States for profit. Justice was present with Smith at Smith's house on the night she was murdered. Justice can speak to trafficking with Smith and a payment he was expected to give Smith the night of her murder. Justice can address drug use at Smith's house, Smith's own drug use, and the impact of his use of methamphetamines on his ability to observe and recall events.

**Deposition of Deena Perez:** Deena Perez was the owner of Affordable Massage, where Smith worked. Perez can speak to her theory that Cheryl Newberry, an Affordable Massage employee, staged the Affordable Massage robbery as revenge against Perez. Perez can address Smith's role as the driver for a burglary ring, her illegal trafficking, her drug dealing, work as an escort, and methamphetamine use.

**Deposition of Wendy McKeown:** Wendy McKeown was a close friend of Smith. McKeown can speak to Smith's illegal trafficking and Smith's expectation to receive payment for her trafficking work on the evening before her death. McKeown knew David Smith and can address their abusive relationship. McKeown can further describe Stephanie Smith's refusal to associate with or provide massages to Hispanics or African

12

Americans, which provides further corroboration of Smith's association with White Supremacist groups.

**Deposition of Russell Biondo:** Russell Biondo was a friend and burglary associate of Smith's and was at Affordable Massage with Smith on the night of the robbery. Biondo can describe Smith's involvement with a burglary ring and Smith's dealing in methamphetamines.

**Deposition of Todd Dentler:** Dentler was a friend of Smith's and can address Smith's association with dangerous individuals.

**Deposition of Angela "Gina" Mitchell:** Angela Mitchell was a friend and co-worker of Smith's at Affordable Massage. Mitchell can address Smith's drug dealing and refusal to associate with African Americans.

**Deposition of Diana Caban:** Diana Caban was a friend and co-worker of Smith's at Affordable Massage. Caban can address Smith's methamphetamine use and refusal to associate with African Americans.

**Deposition of Nancy Clarke:** Nancy Clarke was David Smith's girlfriend at the time of Stephanie Smith's death. Clarke can address David Smith's history of violence and a violent, sexual letter David Smith sent to Clarke while Smith was incarcerated.

**Deposition of Mike Solo:** Mike Solo was at Smith's house the night she was murdered. Solo can address the drug use at Smith's house, Smith's drug use, and his use of methamphetamines.

**Deposition of Cheryl Newberry:** Cheryl Newberry was a co-worker of Smith's at Affordable Massage. Newberry can speak to Smith's drug dealing, illegal trafficking, and

1  the possibility that Smith's murder was due to illegal smuggling, white supremacists, or

2  drugs.

3  **Deposition of Edward Pinnow:** Edward Pinnow was Smith's drug counselor.

4  Pinnow can speak to Smith's methamphetamine use, her association with Rick Nueman,

5  and her work as a prostitute.

6  **Deposition of Robert Storrs:** Robert Storrs served as Johnson's lead attorney at

7  trial. Storrs can speak to the lack of reasonable trial strategy for the errors enumerated in

8  this Claim, specifically the failure to present alternative explanations for Smith's death,

9  any preparation and investigation conducted, and the functioning of the defense team.

10  **Deposition of Rick Tosto:** Rick Tosto served as Storrs' co-counsel during the

11  guilt phase of trial. Tosto can address the lack of reasonable trial strategy for the errors

12  enumerated in this Claim, specifically the failure to present alternative explanations for

13  Smith's death, any preparation and investigation conducted, and the functioning of the

14  defense team.

15      **2.  Expansion of the Record (Rule 7)**

16  Johnson requests expansion of the record to include the relevant exhibits below.

17  **Ex. 5 (ECF No. 19-5) Letter from David Smith to Nancy Clarke:**

18  Approximately one month after Smith's death, David Smith wrote a violent, sexual letter

19  to his girlfriend Clarke while he was incarcerated. Smith describes a sexual fantasy, in

20  which he ties a zip tie around Clarke's neck and tells her, "if you make a sound, I will zip

21  your neck and walk out while you suffocate and die . . . " *Id*. at 8. This document is

22

23

relevant to Johnson's Claim because it shows David Smith's pattern of violence against women.

**Exs. 7–9, 80–83 (ECF No. 19-7 to 19-9, 45-2 to 45-5) Phoenix Police Department Reports:** These police reports describe David Smith's multiple physical and verbal assaults on Stephanie Smith. Several of the reports document David Smith's threats to kill Stephanie Smith. One police report, from April 30, 2000, describes how police were called out to a suspicious vehicle parked near Stephanie Smith's house, which they found was registered to David Smith's girlfriend. Officers identified a handgun underneath the driver's side front door. Stephanie Smith told officers she had an order of protection against David Smith because he had threatened to kill her and used physical force against her. These documents are relevant to Johnson's Claim because they demonstrate David Smith's pattern of violence against Stephanie Smith. The jury did not consider law enforcement's failure to investigate David Smith and his motivation to have his wife killed due to trial counsels' ineffectiveness.

**Ex. 79 (ECF No. 45-1) Phoenix Police Department Record:** This police report describes a fight between David Smith and a man at a clothing store. Smith threatened to kill the man, stating "that's a good way to get a bullet through your head." This document is relevant to Johnson's Claim because it shows David Smith's pattern of violence, which the jury did not consider due to trial counsels' ineffectiveness.

### 3. Evidentiary Hearing (Rule 8)

At an evidentiary hearing on Claim 1, Johnson will present witnesses and testimony including, but not limited to, **Rick Neuman, David Smith, Leonard Justice,**

**Deena Perez, Wendy McKeown, Russell Biondo, Todd, Angela Mitchell, Diana Caban, Nancy Clarke, Mike Solo, Cheryl Newberry,** and **Edward Pinnow**, who would testify to Stephanie Smith's involvement in illegal trafficking, serving as a driver in a burglary ring, dealing in methamphetamine, prostitution, drug use, association with felons who had ties to white supremacists groups, and marriage to a violent man who had threatened to shoot her in the head. Additionally, Johnson will present **Robert Storrs** and **Rick Tosto**, who will testify regarding their actions as co-counsel at the guilt phase of trial, including their failure to present evidence of alternate explanations for Smith's death.[1]

**Claim 2:**   **Trial counsel were ineffective for failing to object and offer rebuttal evidence against impermissibly suggestive photo arrays and unreliable cross-racial identifications.**

Johnson requests discovery, expansion of the record, and an evidentiary hearing in support of his Claim that trial counsel were ineffective for failing to object and offer rebuttal evidence to identifications of Johnson, which were the product of impermissibly suggestive photo spreads and unreliable cross-racial identification. Johnson exhausted this Claim in state court.

**1.  Discovery (Rule 6)**

Johnson requires the assistance of the Court in obtaining information in support of his Claim. He has made credible allegations of a constitutional violation and thus has

---

[1] Depositions of prior counsel would also be relevant to the ineffective assistance of counsel aspects of Claims: 6, 9, 11, 14, 18, 19, 23, 29, 33, 34, & 35.

shown good cause for this request. *See Bracy*, 520 U.S. at 904, 908–09. Accordingly, he moves for court orders for the following requests.

**Deposition of Roy Malpass, Ph.D.:** Dr. Roy Malpass is a professor emeritus of psychology at the University of Texas, El Paso, and is a member of the Eyewitness Identification Research Laboratory at the University. Dr. Malpass would provide information regarding the national standards for eyewitness identification, the issues with the photo arrays in this case, and the problems with cross-racial identifications.

**Deposition of Russel Biondo:** Biondo can speak to his hesitant identification of Johnson in a photographic lineup, and his identification of Johnson in court. Biondo would further describe his state of mind at the time of the Affordable Massage robbery.

**Depositions of Robert Storrs & Rick Tosto:** Storrs and Tosto can speak to the lack of reasonable trial strategy for their failure to object or offer rebuttal evidence to the identifications of Johnson.

**Deposition of James D. Stoehr, Ph.D.:** Dr. James D. Stoehr is a professor at Midwestern University and author of *The Neurobiology of Addiction*. Dr. Stoehr can provide information on the effects of methamphetamine use, and specifically the effects of Biondo's methamphetamine use on his ability to accurately recall the details of the Affordable Massage robbery.

2. **Expansion of the Record (Rule 7)**

Johnson requests expansion of the record to include the relevant exhibits below.

**Exs**. **11 & 12 (ECF No. 19-11 & 19-12) Reports by Dr. Roy Malpass:** Dr. Malpass's reports describe changes in the science of eyewitness identification since 2010.

17

They include information on the "cross-race effect," and the inaccuracy of in-court identifications. ECF No. 19-11 at 3; ECF No. 19-12 at 2-3, 7, 11. Dr. Malpass's reports are relevant to Johnson's Claim that the identifications of Johnson were flawed and unreliable, and counsel were ineffective for failing to object to the identifications.

**Ex. 14 (ECF No. 19-14) Amended Report of Dr. James Stoehr:** This report describes the known effects of methamphetamine use and Dr. Stoehr's opinion on Biondo's historical drug use and use of methamphetamine on the day of the Affordable Massage robbery. This exhibit supports Johnson's argument that Biondo's identification of Johnson should have been excluded at trial as unreliable, and counsels' ineffectiveness in failing to object to Biondo's testimony.

### 3.  Evidentiary Hearing (Rule 8)

At an evidentiary hearing on Claim 2, Johnson will present witnesses and testimony including, but not limited to, **Dr. Roy Malpass**, who will testify regarding the flawed photographic lineups and eyewitness identifications; **Dr. James D. Stoehr**, who will testify about the effects of methamphetamine use and the effect of chronic methamphetamine use on Biondo's ability to recall the events of the Affordable Massage robbery; and **Russel Biondo**, who will testify about his hesitant identification of Johnson in the photographic lineup on the day of the robbery and in-court identification of Johnson, as well, as his chronic drug use. Additionally, Johnson will present **Robert Storrs** and **Rick Tosto**, who will testify regarding their failure to object to the identifications of Johnson.

**Claim 3:      Repeated instances of prosecutorial misconduct denied Johnson due process, a fair trial, and a reliable sentencing.**

Johnson requests discovery, expansion of the record, and an evidentiary hearing in support of his Claim that the prosecutor engaged in repeated and pervasive misconduct. Portions of this Claim were exhausted. To the extent it was not exhausted, the ineffective assistance of counsel that Johnson received during his state postconviction proceedings in failing to present this substantial Claim provides cause for the default and establishes prejudice. *See Martinez*, 566 U.S. at 17.

### 1. **Discovery (Rule 6)**

Johnson requires the assistance of the Court in obtaining information in support of his Claim. He has made credible allegations of a constitutional violation and thus has shown good cause for this request. *See Bracy*, 520 U.S. at 904, 908–09. Accordingly, he moves for court orders for the following requests.

**Deposition of Phyllis Hansen:** Phyllis Hansen was a clerk at the Maryvale County Justice Court (MCJC) and testified for the State at trial, alleging that Johnson committed the Affordable Massage robbery and killed Smith. Hansen can speak to the fact that she had access to information about the case from files at the MCJC and the circumstances concerning her termination as court clerk. Hansen can additionally address the prosecutor's misleading line of questioning regarding her access to information about Smith's homicide.

**Deposition of Detective Thomas Kulesa:** Detective Thomas Kulesa was the lead detective on the Smith homicide. Kulesa can speak to his belief that the Smith homicide

report was "restricted" and only accessible to the homicide team and that search warrants were obtained through the Superior Court, rather than the MCJC. The prosecutor knew this information was incorrect; therefore, Kulesa's testimony will support Johnson's Claim that the prosecutor knowingly failed to correct false or misleading testimony.

**Deposition of Patricia Stevens:** Patricia Stevens was a Deputy County Attorney at the Maricopa County Attorney's Office, who prosecuted Johnson. Johnson seeks to obtain information regarding the office's pattern and practice of misconduct and unethical behavior. Stevens can address her decisions during trial, including her failure to correct false and misleading testimony, knowing presentation of misleading and false testimony, failure to disclose information pursuant to *Brady*[2] and *Napue*[3], improper vouching for witness's truthfulness, and inappropriate comments during arguments to the jury.

**Depositions of Robert Storrs & Rick Tosto:** Storrs and Tosto can speak to the lack of reasonable trial strategy for the errors enumerated in this Claim, including their failure to address and litigate the issue of Stevens's prosecutorial misconduct.

**Deposition of Nathaniel Carr**: Nathaniel Carr was co-counsel with Storrs during the guilt phase of Johnson's trial. Carr can speak to the lack of reasonable trial strategy for the errors enumerated in this Claim, including their failure to address Stevens's prosecutorial misconduct.

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).
[3] *Napue v. Illinois*, 360 U.S. 264 (1959).

20

**Deposition of Cheryl Newberry:** Newberry can address her access to Smith's homicide report and supplements, to contest Kulesa's testimony. Newberry can also speak to knowingly making false statements to the jury, her use of medication during the trial, as well as the details of her plea agreement, which the prosecutor did not disclose to the jury.

**Deposition of Detective Rusty Stuart:** Detective Rusty Stuart was a detective on the Smith homicide. Stuart can speak to the prosecutor's mischaracterizations, specifically her mischaracterization of a call between Johnson and Jarvis Ross.

**Deposition of Russel Biondo:** Biondo can address the benefits he received for testifying against Johnson, which were not disclosed to the jury by the prosecutor.

**Deposition of Andrea Stiles:** Andrea Stiles was Russel Biondo's Probation Officer. Stiles can address the Probation Department's decision to wait to file a probation revocation petition against Biondo until after he testified at Johnson's trial. Stiles can speak to the decision to allow Biondo, a registered sex offender, to remain out-of-custody and living with his minor daughter until he testified against Johnson.

2. <u>**Expansion of the Record (Rule 7)**</u>

Johnson requests expansion of the record to include the following relevant exhibit.

**Ex. 16 (ECF No. 19-16) Receipt of Discovery Materials signed by Robert Storrs:** This document contains the discovery materials disclosed to Storrs as part of the Quindell Carter case. The materials include Smith's homicide report and supplements, which were disclosed to Carter on December 14, 2000. *Id*. at 38–39. This material is

21

relevant to Johnson's Claim that the prosecutor failed to correct inaccurate testimony regarding access to Smith's homicide report.

### 3. Evidentiary Hearing (Rule 8)

At an evidentiary hearing on Claim 3, Johnson will present witnesses and testimony including, but not limited to, **Detective Kulesa**, **Phyllis Hansen**, **Cheryl Newberry**, and **Detective Stuart**, whose testimony will demonstrate that the prosecutor failed to correct false testimony, or presented the jury with misleading testimony; **Russel Biondo** and **Andrea Stiles**, who will testify to the benefits Biondo received for testifying against Johnson; and **Patricia Stevens**, who will testify to her misconduct during trial. Additionally, Johnson will present **Robert Storrs**, **Rick Tosto**, and **Nathaniel Carr**, who will testify regarding their failure to address Stevens' prosecutorial misconduct

**Claim 4:    Trial counsel were ineffective for failing to independently investigate and challenge the state's guilt phase case.**

Johnson requests discovery, expansion of the record, and an evidentiary hearing in support of his Claim that trial counsel were ineffective for failing to investigate and challenge the State's guilt phase case. Johnson exhausted this Claim in state court. To the extent any subsection of Claim 4 is unexhausted, the ineffective assistance of counsel that Johnson received during his state postconviction proceedings in failing to present this substantial Claim provides cause for the default and establishes prejudice. *See Martinez*, 566 U.S. at 17.

///

///

1    **1. Discovery (Rule 6)**

2          Johnson requires the assistance of the Court in obtaining information in support of

3    his Claim. He has made credible allegations of a constitutional violation and thus has

4    shown good cause for this request. *See Bracy*, 520 U.S. at 904, 908–09. Accordingly, he

5    moves for court authorization to issue the following deposition subpoenas.

6          **Depositions of Robert Storrs & Rick Tosto:** Storrs and Tosto can speak to the

7    lack of reasonable trial strategy for their failure to interview the State's witnesses prior to

8    trial, and their general lack of preparation for trial.

9          **Deposition of Arthur Hanratty:** Arthur Hanratty was the defense investigator

10   during trial. Hanratty will address the defense team's failure to investigate, including the

11   fact that he had no file, billing records, or recollection of the case when interviewed

12   during state postconviction proceedings.

13         **Deposition of James Stoehr, Ph.D.:** Dr. Stoehr will address the evidence trial

14   counsel should have presented on methamphetamine abuse and Biondo's use of

15   methamphetamines.

16         **Deposition of Heather Grant:** Heather Grant was living at Phyllis Hansen's

17   home at the time of Smith's murder. Grant was not called to testify at trial, but can speak

18   to Hansen's character for truthfulness and can rebut aspects of Hansen's testimony.

19         **Deposition of Heinz Sauermann:** Heinz Sauermann was a manger of the MCJC

20   security in 2000, when Phyllis Hansen worked at the court. Sauermann can speak to the

21   Phoenix Police Department's 2000 investigation of MCJC personnel.

22

23

**Deposition of Bonnie Discus:** Bonnie Discus was the MCJC Administrator in 2000. Discus can speak to the Phoenix Police Department's investigation of Phyllis Hansen in 2000. Discus can also address her decision to place Hansen on administrative leave, and decision, after conducting an investigation into the accounting of the MCJC records, to terminate Hansen's employment.

**Deposition of Dan Fishel:** Dan Fishel is an Investigator for the Arizona State Office of the Capital Postconviction Public Defender, which represented Johnson during state postconviction proceedings. Fishel can address his interviews with Sauermann and Discus.

**Deposition of Cheryl Newberry:** Although a key witness in the case, who testified Johnson confessed to murdering Smith, counsel did not independently investigate Newberry. Newberry can address her admission to police that she planned the Affordable Massage robbery, can speak to her false statements that she was good friends with Smith and feared Johnson, and can discuss her plea agreement. Newberry made numerous statements to the State which could have been discredited; however, defense counsel were unable to impeach her credibility due to the lack of investigation and failure to prepare for trial.

**Deposition of Phyllis Hansen:** Although a key witness in the case, who testified that Johnson confessed to murdering Smith, Hansen was not independently investigated or interviewed by trial counsel. Hansen's husband was manufacturing and selling methamphetamine from their house, a young man was killed in their home, and Hansen

herself was fired from her job as chief clerk at the MCJC for stealing funds. However, the defense team was unable to discredit Hansen, because they were unprepared for trial.

**Deposition of Russel Biondo:** Biondo was a key witness in the case, and the only other witness from the Affordable Massage robbery. Biondo used methamphetamine daily; however, trial counsel did not independently investigate or interview Biondo. Biondo's testimony will demonstrate the defense team's failure to prepare for trial.

## 2.  Expansion of the Record (Rule 7)

Johnson requests expansion of the record to include the relevant exhibits below.

**Ex. 14 (ECF No. 19-14) Amended Report of Dr. James Stoehr:** As outlined in Claim 2, this exhibit supports Johnson's argument that Biondo's identification of Johnson should have been excluded at trial as unreliable, and counsel were ineffective for failing to challenge his identification.

**Exs. 17, 20–22 (ECF No. 19-17, 19-20 to 19-22) Transcripts of Interviews with Cheryl Newberry:** Newberry was interviewed on several different occasions by the State, and made inconsistent statements during each interview. For example, Newberry initially told law enforcement that she was not involved in the Affordable Massage robbery, (ECF No. 19-21 at 6; ECF No. 19-17 at 33), before admitting that the robbery was her idea. ECF No. 19-20 at 19; ECF No. 19-22 at 4. Newberry also changed her statements on whether she intended for Smith to be robbed, both denying, (ECF No. 19-21 at 15; ECF No. 19-22 at 5), and admitting her intentions. ECF No. 19-17 at 33, 34; ECF No. 19-20 at 20. These documents are relevant to Johnson's Claim because they

show how unprepared the defense team was for trial. Counsel were unable to impeach Newberry, even with her numerous, documented inconsistent statements.

**Ex. 18 (ECF No. 19-18) Declaration of Suzy Riccardo:** Suzy Riccardo is Cheryl Newberry ex-girlfriend. In her declaration, Riccardo describes how Newberry was addicted to drugs at the time of Smith's death and was not an honest person. Riccardo's statements substantiate Johnson's Claim that counsel was unprepared for trial and could not refute false or misleading statements by witnesses or the prosecutor.

**Ex. 19 (ECF No. 19-19) Declaration of Ralph Newberry:** Ralph Newberry is Cheryl Newberry's ex-husband. Ralph Newberry described Cheryl Newberry as addicted to crack-cocaine and a dishonest person. Ralph Newberry's statements substantiate Johnson's Claim that counsel was unprepared for trial and could not refute false or misleading statements by witnesses or the prosecutor.

**Ex. 23 (ECF No. 19-23) Ruben Johnson's full interrogation and Ex. 24 (ECF No. 19-24) Ruben Johnson's edited interrogation (trial exhibit 261):** ECF No. 19-23 (Ex. 23) is Ruben Johnson's full interrogation and ECF No. 19-24 (Ex. 24) is a four-minute edited portion of the interrogation that the State presented at trial. Without context, the redacted tape presents Johnson as extremely aggressive toward police interrogators. These documents are relevant to Johnson's Claim because they display counsels' inability to properly object to the edited tape or put it into context, which prejudiced Johnson.

**Ex. 85 (ECF No. 45-7) Declaration of Heather Grant:** In her statement, Grant impeaches Hansen's testimony; however, counsel did not call Grant to testify at trial to

refute Hansen. This document is relevant to Johnson's Claim because it shows counsel's ineffectiveness in failing to impeach the credibility of one of the State's star witnesses.

### 3. Evidentiary Hearing (Rule 8)

At an evidentiary hearing on Claim 4, Johnson will present witnesses and testimony including, but not limited to, **Heinz Sauermann, Bonnie Dicus**, and **Dan Fishel** who can testify about the Phoenix Police Department's investigation of Phyllis Hansen; **Russel Biondo**, who identified Johnson as one of the Affordable Massage robbers, but was never interviewed by the defense team; **Dr. James Stoehr**, who will testify about the effects of methamphetamine and the effect of chronic methamphetamine use on Biondo's ability to recall the events of the Affordable Massage robbery; **Cheryl Newberry** and **Phyllis Hansen**, who testified Johnson confessed to murdering Smith, but were never interviewed by the defense team or impeached on their numerous false and misleading statements; **Heather Grant**, who will testify to Hansen's credibility; and **Arthur Hanratty**, who will testify that he was the investigator for the defense team, but did not perform and was not assigned any tasks. Additionally, Johnson will also present **Robert Storrs**, **Rick Tosto**, and **Nathaniel Carr**, who will testify regarding their failure to prepare for the trial.

**Claim 5:**   **Johnson's trial counsel failed to render effective assistance during the trial-phase voir dire.**

Johnson requests discovery and an evidentiary hearing in support of his Claim that counsel rendered ineffective assistance during the trial-phase voir dire. This Claim was procedurally defaulted, but the ineffective assistance of counsel that Johnson received

during his state postconviction proceedings in failing to present this substantial Claim provides cause for the default and establishes prejudice. *See Martinez*, 566 U.S. at 17.

### 1. **Discovery (Rule 6)**

Johnson requires the assistance of the Court in obtaining information in support of his Claim. He has made credible allegations of a constitutional violation and thus has shown good cause for this request. *See Bracy*, 520 U.S. at 904, 908–09. Accordingly, he moves for court orders for the following requests.

**Depositions of Robert Storrs & Rick Tosto:** Storrs and Tosto can speak to the lack of reasonable trial strategy, their lack of preparation for voir dire, and their failure to question concerned jurors, individually question jurors, ensure a record of peremptory challenges, and ensure a diverse jury pool.

**Deposition of William White:** William White was the Maricopa County Jury Commissioner at the time of Johnson's trial. The trial court refused to utilize a jury questionnaire, because, in part, it was "incredibly time consuming." ECF No. 18 at 152. White can speak to Maricopa County's use of juror questionnaires, its method of screening jurors, and whether its prescreening methods systematically exclude minority jurors.

### 2. **Evidentiary Hearing (Rule 8)**

At an evidentiary hearing on Claim 5, Johnson will present witnesses and testimony including, but not limited to, **Robert Storrs** and **Rick Tosto** who will testify regarding their decisions during voir dire, including their failure to utilize the opportunity to effectively question jurors; and **William White** who will testify about Maricopa

28

County's use of juror questionnaires and method of screening jurors, including its method of prescreening jurors and whether it systematically excludes minority jurors.

**Claim 8:    Johnson was denied a fair trial because biased jurors sentenced him to death.**

Johnson requests expansion of the record in support of his Claim that his jury was biased. Johnson exhausted a portion of this Claim in state court. To the extent the Claim was not exhausted, any default is due to the ineffective assistance of counsel that Johnson received during his state postconviction proceedings, which provides cause for the default and establishes prejudice. *See Martinez*, 566 U.S. at 17.

### 1.   <u>Expansion of the Record (Rule 7)</u>

Johnson requests expansion of the record to include the relevant exhibits below.

**Ex. 26 (ECF No. 19-26) Juror Agee's Juror Questionnaire:** Juror Agee expressed anti-gang bias in his juror questionnaire, writing "yes" when asked, "Would gang influence you [sic] or play any part in your ability to be fair and impartial in deciding the issues in the case?" *Id*. at 16. Further, he wrote, "Street gangs are involved in criminal activity." *Id*. The trial court denied defense counsel's challenge of Agee, despite his bias, and Agee was seated as a juror. This questionnaire supports Johnson's argument that he was sentenced to death by biased jurors.

**Ex. 38 (ECF No. 20-8) Juror Davis' Juror Questionnaire:** Juror Davis showed a bias against gangs in her juror questionnaire, writing, "I have no patience for black street gangs. Living outside DC made me hate the gangs." *Id*. at 16. Davis was also biased in favor of the death penalty, noting in her juror questionnaire that the death

29

penalty "should [be] in all states and it isn't use enough." *Id*. at 19. The trial court denied defense counsel's challenge of Davis, despite her biases, and Davis was seated as a juror. This questionnaire supports Johnson's argument that he was sentenced to death by biased jurors.

**Ex. 39 (ECF No. 20-9) Juror Ellens' Juror Questionnaire:** Juror Ellens exhibited a pro-prosecution bias, writing "I think the death penalty is good if the crime committed was taking another's life. If this punishment was given more, there might be less crime." *Id*. at 19. Ellens had also experienced close familial violence, as his eldest daughter's mother was murdered two years prior to the trial. *Id*. at 11, 21. The trial court denied defense counsel's challenge of Ellens, despite his biases, and Ellens was seated as a juror. This questionnaire supports Johnson's argument that he was sentenced to death by biased jurors.

**Ex. 27 (ECF 19-27) Jury List:** The sentencing jury list included jurors Agee, Davis, and Ellens, who ultimately sentenced Johnson to death.

**Claim 9(B): Johnson was denied a fair trial and impartial jury at the sentencing phase due to the lack of Black prospective jurors on the venire.**

Johnson requests discovery in support of his Claim that the jury selection process was unconstitutional. This Claim was procedurally defaulted, but the ineffective assistance of counsel that Johnson received during his state post-conviction proceedings in failing to present this substantial Claim provides cause for the default and establishes prejudice. *See Martinez*, 566 U.S. at 17.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**1. <u>Discovery (Rule 6)</u>**

Johnson requires the assistance of the Court in obtaining information in support of his Claim. He has made credible allegations of a constitutional violation and thus has shown good cause for this request. *See Bracy*, 520 U.S. at 904, 908-09. Accordingly, he moves for court orders for the following request.

**Subpoena Duces Tecum to the Maricopa County Attorney's Office ("MCAO"):** Johnson seeks any documents or electronically stored information in the possession or custody of MCAO regarding the jury selection process in capital cases in Maricopa County from 2000 through 2005. Of particular interest are documents or electronically stored information providing information about the demographic characteristics and views of individual venirepersons, whether they served on the jury, and, if not, then the reason they were stricken or released from the venire panel. Such documents or electronically stored information includes but is not limited to completed jury questionnaires, communications between counsel and the court or court staff regarding potential jurors, and voir dire transcripts that are not publicly available.

**Claim 10:     Trial counsel were ineffective for failing to request an instruction that mere gang membership is not a crime.**

Johnson requests discovery and an evidentiary hearing in support of his Claim that trial counsel were ineffective for failing to request an instruction that mere gang membership is not a crime. This Claim was procedurally defaulted, but the ineffective assistance of counsel that Johnson received during his state postconviction proceedings in

failing to present this substantial Claim provides cause for the default and establishes prejudice. *See Martinez*, 566 U.S. at 17.

### 1. Discovery (Rule 6)

Johnson requires the assistance of the Court in obtaining information in support of his Claim. He has made credible allegations of a constitutional violation and thus has shown good cause for this request. *See Bracy*, 520 U.S. at 904, 908-09. Accordingly, he moves for court orders for the following requests.

**Depositions of Robert Storrs, Rick Tosto, & Nathanial Carr:** Storrs, Tosto, and Carr can speak to the lack of reasonable trial strategy for failing to request an instruction that mere gang membership is not a crime.

### 2. Evidentiary Hearing (Rule 8)

At an evidentiary hearing on Claim 10, Johnson will present witnesses and testimony including, but not limited to, **Robert Storrs**, **Rick Tosto**, and **Nathaniel Carr**, who would testify about the lack of a strategic reason for failing to request an instruction that mere gang membership is not a crime.

**Claim 11:   Arizona's definitions of "criminal street gang" and "criminal street gang member" are void for vagueness.**

Johnson requests discovery, expansion of the record, and an evidentiary hearing in support of his Claim that Arizona's definitions of "criminal street gang" and "criminal street gang member" are void for vagueness. This Claim was procedurally defaulted, but the ineffective assistance of counsel that Johnson received during his state postconviction

proceedings in failing to present this substantial Claim provides cause for the default and establishes prejudice. *See Martinez*, 566 U.S. at 17.

### 1. Discovery (Rule 6)

Johnson requires the assistance of the Court in obtaining information in support of his Claim. He has made credible allegations of a constitutional violation and thus has shown good cause for this request. *See Bracy*, 520 U.S. at 904, 908–09. Accordingly, he moves for court orders for the following request.

**Depositions of Robert Storrs, Rick Tosto, & Nathaniel Carr:** Storrs, Tosto, and Carr can speak to the lack of reasonable trial strategy for failing to challenge Arizona's definitions of "criminal street gang" and "criminal street gang member."

### 2. Expansion of the Record (Rule 7)

Johnson requests expansion of the record to include the relevant exhibit below.

**Ex. 86 (ECF No. 40-8) Minute of Meetings on S.B. 1291:** This document is relevant to Johnson's Claim because it shows the vagueness of Arizona's statute. At a hearing on the statute, concern was expressed that the bill's definition of a criminal street gang was so broad and vague that it could even encompass "a police department or three or more members of a police department might be identified as a criminal street gang." *Id.*

### 3. Evidentiary Hearing (Rule 8)

At an evidentiary hearing on Claim 11, Johnson will present **Robert Storrs**, **Rick Tosto**, and **Nathaniel Carr** to testify as to why they did not object to the instructions that

included Arizona's vague definitions of "criminal street gang" and "criminal street gang member."

**Claim 12:    A combination of trial court error and attorney ineffectiveness led the jury to hear prejudicial and unreliable character evidence throughout Johnson's proceedings.**

Johnson requests discovery and an evidentiary hearing in support of his Claim that due to trial court error and ineffective assistance of counsel, the jury heard prejudicial and unreliable character evidence. Johnson exhausted a portion of this Claim in state court. To the extent the Claim was not exhausted any default is due to the ineffective assistance of counsel that Johnson received during his state postconviction proceedings, which provides cause for the default and establishes prejudice. *See Martinez*, 566 U.S. at 17.

1. **Discovery (Rule 6)**

Johnson requires the assistance of the Court in obtaining information in support of his Claim. He has made credible allegations of a constitutional violation and thus has shown good cause for this request. *See Bracy*, 520 U.S. at 904, 908–09. Accordingly, he moves for court orders for the following requests.

**Depositions of Robert Storrs, Rick Tosto, & Nathanial Carr:** Storrs, Tosto, and Carr can speak to the lack of reasonable trial strategy for counsels' failure to object to Detective Rusty Stuart's prejudicial testimony during both the guilt and penalty phases.

**Deposition of Detective Rusty Stuart:** Detective Rusty Stuart was a detective on the Smith homicide and testified as the State's gang expert during both the guilt and penalty phases. Stuart can address his trial testimony that contained numerous contradictions about Arizona gangs in general and the LPC gang in particular. Stuart can

34

also speak to his prejudicial opinion that Johnson was a gang member and Johnson committed the Smith murder to eliminate her as a witness to the Affordable Massage robbery.

### 2. **Evidentiary Hearing (Rule 8)**

At an evidentiary hearing on Claim 12, Johnson will present witnesses and testimony including, but not limited to, **Detective Rusty Stuart**, who would address his gang testimony and his investigation into Johnson's involvement with the LPC; and **Robert Storrs**, **Rick Tosto**, and **Nathaniel Carr** who would address their failure to object to Stuart's prejudicial gang testimony.

**Claim 13:   Trial Counsel were ineffective for failing to move to preclude rap lyrics, attributed to Johnson and co-defendant Jarvis Ross, on First Amendment and Confrontation Clause grounds, and the trial court erred in not excluding the lyrics based on offered evidentiary objections.**

Johnson requests discovery, expansion of the record, and an evidentiary hearing in support of his Claim that trial counsel were ineffective in failing to preclude rap lyrics. This Claim was procedurally defaulted, but the ineffective assistance of counsel that Johnson received during his state postconviction proceedings in failing to present this substantial Claim provides cause for the default and establishes prejudice. *See Martinez*, 566 U.S. at 17.

### 1. **Discovery (Rule 6)**

Johnson requires the assistance of the Court in obtaining information in support of his Claim. He has made credible allegations of a constitutional violation and thus has

35

shown good cause for this request. *See Bracy*, 520 U.S. at 904, 908–09. Accordingly, he moves for court orders for the following requests.

**Depositions of Robert Storrs, Rick Tosto, & Nathaniel Carr:** Storrs, Tosto, and Carr can speak to the lack of reasonable trial strategy for counsels' failure to raise evidentiary objections or a First Amendment objection, and failure to consult with an expert on rap music.

### 2.  Expansion of the Record (Rule 7)

Johnson requests expansion of the record to include the relevant exhibits below.

**Ex. 42 (ECF No. 20-12) Autographed photograph of Rapper MC Eight:** This photo is relevant to Johnson's Claim because it shows his admiration for rap music. The lyrics introduced by the State emulate the graphic and violent style of rappers such as MC Eight.

**Ex. 43 (ECF No. 20-13) Rap compositions "Book of Counted Sorrows":** This document is relevant to Johnson's Claim that counsel were ineffective for failing to introduce rap compositions that did not contain descriptions of violence. The lyrics in this document include declarations of love, longing, and sexual interest, as well as musings on destiny and free will.

**Ex. 87 (ECF No. 45-9) Rap lyrics admitted at trial:** These lyrics were admitted at trial and were alleged to have been written by Johnson. The lyrics are relevant to Johnson's Claim that counsel should have objected to the lyrics as unauthenticated, because they do not mention the Affordable Massage robbery nor the Smith's murder.

### 3. **Evidentiary Hearing (Rule 8)**

At an evidentiary hearing on Claim 13, Johnson will present **Robert Storrs**, **Rick Tosto**, and **Nathaniel Carr** to testify as to why they did not make evidentiary objections, raise a First Amendment objection, or consult with an expert on rap music.

**Claim 14:    An improper jury instruction likely caused the jury to vote for death to ensure Johnson was never released from custody.**

Johnson requests discovery, expansion of the record, and an evidentiary hearing in support of his Claim that the jury was improperly instructed that Johnson could be released on parole if the jury did not sentence him to death. This Claim was procedurally defaulted, but the ineffective assistance of counsel that Johnson received during his state postconviction proceedings in failing to present this substantial Claim provides cause for the default and establishes prejudice. *See Martinez*, 566 U.S. at 17.

### 1. **Discovery (Rule 6)**

Johnson requires the assistance of the Court in obtaining information in support of his Claim. He has made credible allegations of a constitutional violation and thus has shown good cause for this request. *See Bracy*, 520 U.S. at 904, 908–09. Accordingly, he moves for court orders for the following requests.

**Depositions of Robert Storrs, Rick Tosto, & Nathaniel Carr:** Storrs, Tosto, and Carr can speak to the lack of reasonable trial strategy for their failure to object to the incorrect jury instruction and failure to offer an alternate jury instruction.

### 2. **Expansion of the Record (Rule 7)**

Johnson requests expansion of the record to include the following relevant exhibit.

**Ex. 49 (ECF No. 20-19) Blank Jury Questionnaire:** The questionnaire is offered as a representative of the questionnaires provided to all jurors. The questionnaire improperly advised potential jurors that if the jury sentenced Johnson to life imprisonment, the judge could sentence Johnson to prison for the rest of his natural life or prison with the possibility of parole after twenty-five years. *Id*. at 9. This supports Johnson's argument that counsel were ineffective in properly instructing the jury.

### 3.  Evidentiary Hearing (Rule 8)

At an evidentiary hearing on Claim 14, Johnson will present **Robert Storrs**, **Rick Tosto**, and **Nathaniel Carr** to testify as to why they did not object to the incorrect instruction, offer an alternate instruction, or consult an expert.

**Claim 15:   Johnson was denied conflict-free counsel at the sentencing phase of the trial and at state postconviction.**

Johnson requests discovery and an evidentiary hearing in support of his Claim that trial and state postconviction counsel were conflicted. To the extent the Claim was not exhausted, any default is due to the ineffective assistance of counsel that Johnson received during his state postconviction proceedings, which provides cause for the default and establishes prejudice. *See Martinez*, 566 U.S. at 17.

### 1.  Discovery (Rule 6)

Johnson requires the assistance of the Court in obtaining information in support of his Claim. He has made credible allegations of a constitutional violation and thus has shown good cause for this request. *See Bracy*, 520 U.S. at 904, 908–09. Accordingly, he moves for court orders for the following requests.

**Deposition of Nathaniel Carr:** Carr was consulted by Phyllis Hansen, the State's witness, "about another murder committed by [Johnson]." TR 12/12/2003 at 6–7. It is necessary to depose Carr in order to determine the full scope of his conflict of interest in consulting with the State's star witness against Johnson.

**Deposition of Phyllis Hansen:** Hansen consulted Carr "about another murder committed by [Johnson]." TR 12/12/2003 at 6–7. It is necessary to depose Hansen in order to determine the full scope of Carr's conflict of interest in consulting with the State's star witness against Johnson.

**Deposition of Director of Maricopa County Office of the Legal Advocate ("OLA"):** The OLA represented Johnson in his state postconviction proceedings. The OLA also represented Jarvis Ross, Johnson's co-defendant in the Affordable Massage robbery, and David Smith. The deposition is necessary to determine the full scope of OLA's conflict of interest.

**Deposition of OLA investigators:** Johnson intends to obtain information regarding any investigation done by OLA investigators for either Johnson or Ross. The deposition is necessary to determine the full scope of OLA's conflict of interest.

## 2. Evidentiary Hearing (Rule 8)

At an evidentiary hearing on Claim 15, Johnson will present witnesses and testimony including, but not limited to, **Nathaniel Carr** and **Phyllis Hansen** to testify as to Carr's conflict of interest; and the **Director of the OLA and OLA investigators** to testify as to OLA's conflict of interest.

**Claim 16:    Trial counsel were ineffective at the penalty phase of Johnson's trial.**

Johnson requests discovery, expansion of the record, and an evidentiary hearing in support of his Claim that trial counsel provided ineffective assistance in preparation for and at the mitigation phase of Johnson's trial. Johnson contends this Claim was properly exhausted in state court.

### 1. **Discovery (Rule 6)**

Johnson requires the assistance of the Court in obtaining information in support of his Claim. He has made credible allegations of a constitutional violation and thus has shown good cause for this request. *See Bracy*, 520 U.S. at 904, 908–09. Accordingly, he moves for court orders for the following requests.

**Depositions of Robert Storrs & Nathaniel Carr:** Storrs and Carr can speak to the lack of reasonable trial strategy for their failure to properly investigate and prepare for the penalty phase, failure to properly prepare experts, and decision to stipulate and allow the jury to hear the co-defendant's admissions.

**Depositions of State Postconviction Counsel:** Johnson seeks to depose Martin Lieberman, Charles Babbitt, Thomas Dennis, and Raquel Centeno-Fequiere, Johnson's appointed state postconviction attorneys.  These attorneys can address decisions regarding penalty phase claims during state postconviction proceedings. Further, the attorneys can address the State's claim that Johnson properly waived his penalty claims.

**Depositions of Mary Durand, Nora Shaw, Pamela Siller, and David Wilcox:** Mary Durand, Nora Shaw, Pamela Siller, and David Wilcox each acted at one point as

40

Johnson's mitigation specialists. Durand also worked as the Mitigation Coordinator for the Maricopa County Office of Contract Counsel ("MCOCC"). Each can speak to the investigation they individually conducted and the functioning of the defense team, including any deficiencies in the investigation, development, or presentation of mitigation, and dealings with trial counsel.

**Deposition of Arthur Hanratty:** Defense investigator Hanratty will address the defense team's failure to investigate. Hanratty had no file, billing records, or recollection of the case when interviewed during postconviction proceedings.

### 2. Expansion of the Record (Rule 7)

Johnson requests expansion of the record to include the relevant exhibits below.

**Ex. 50 (ECF No. 20-20) Detail of services for Siller Investigative Services:** This document details the work and number of hours Pamela Siller spent on Johnson's case. These records are relevant to Johnson's Claim that mitigation evidence was not sufficiently investigated.

**Ex. 51 (ECF No. 20-21) Correspondence from Mary Durand:** This correspondence from Durand, in her role as Mitigation Coordinator for MCOCC, notifies attorneys from the Office of Contract Counsel that the mitigation specialists were severely understaffed and underfunded and were unable to complete their investigations. These records are relevant to Johnson's Claim that mitigation evidence was not sufficiently investigated.

**Ex. 52 (ECF No. 20-22) Confidential memo to Johnson file from Pamela Siller:** This document is a memo Siller provided to Storrs, detailing a mitigation

investigation plan. Counsel never completed the investigation. These records are relevant to Johnson's Claim that mitigation evidence was not sufficiently investigated.

**Ex. 53 (ECF No. 20-23) Declaration of Myra Johnson:** This declaration from Johnson's mother details Johnson's first years of life, including the fact that he lived in a lead contaminated home and was developmentally delayed. The jury was not presented with this mitigation evidence due to counsels' ineffectiveness.

**Ex. 54 (ECF No. 20-24) Johnson's health records from St. Joseph's Hospital:** These medical records document Johnson's automobile accident at age sixteen that resulted in a traumatic brain injury. The jury was not presented with this mitigation evidence due to counsels' ineffectiveness.

**Ex. 55 (ECF No. 20-27) Declaration of Dorubah Johnson:** Johnson temporarily resided with his friend, Dorubah Johnson, and his family when he was a teenager. His declaration describes how Johnson lacked a father figure in his life, because his father was extremely abusive, and looked up to Dorubah Johnson's father. The jury was not presented with this mitigation evidence due to counsels' ineffectiveness.

**Ex. 56 (ECF No. 20-28) Declaration of Larry Johnson, Sr.:** Larry Johnson, Sr., is Dorubah Johnson's father. In his declaration, Larry Johnson describes how as a teenager, Johnson, asked to move into Larry Johnson's house because he was looking for a stable environment with structure, rules, and a father figure. The jury was not presented with this mitigation evidence due to counsels' ineffectiveness.

**Ex. 57 (ECF No. 20-29) Request for expenditure of funds, Marc Walter, Ph.D.:** Dr. Walter is a neuropsychologist who conducted a neuropsychological evaluation

of Johnson. Dr. Walter found that Johnson suffered from variable memory and executive impairment, with test performance indicating he has a genetic predisposition to left frontal brain dysfunction. This document shows that counsel requested funding to hire Dr. Walter; however counsel was ineffective because they did not have Dr. Walter testify about the results of his examination.

**Ex. 58 (ECF No. 20-30) Progress notes prepared by Drake Duane, M.D.:** Dr. Duane conducted an evaluation and testing of Johnson, including an MRI of his brain and electrical brain mapping. Dr. Duane found Johnson suffered from a cognitive impairment; findings which were consistent with Dr. Walter's opinion. The jury was not presented with this mitigation evidence due to counsels' ineffectiveness.

**Ex. 59 (ECF No. 20-31) Records from the City of Baltimore Health Department:** These records document the existence of lead at Johnson's home. The jury was not presented with this mitigation evidence due to counsels' ineffectiveness.

**Ex. 78 (ECF No. 21-18) Behavioral Management Plan Arizona Department of Juvenile Corrections:** A Behavioral Management Plan was developed for Johnson at the Adobe Juvenile Commitment Facility. The plan documents Ruben's need for counseling, and shows that Johnson was never offered therapeutic intervention. The jury was not presented with this mitigation evidence due to counsels' ineffectiveness.

### 3.  **Evidentiary Hearing (Rule 8)**

At an evidentiary hearing on Claim 16, Johnson will present witnesses and testimony including, but not limited to, **Robert Storrs** and **Nathaniel Carr** who will testify to the lack of a reasonable mitigation strategy, the failure to properly investigate

and prepare for the penalty phase and to properly prepare experts, and the decision to

stipulate and allow the jury to hear the co-defendant's admissions; **Martin Lieberman**,

**Charles Babbitt**, **Thomas Dennis**, and **Raquel Centeno-Fequiere** will testify regarding

penalty phase claims not raised during state postconviction proceedings and the State's

claim Johnson waived his penalty claims; **Mary Durand**, **Nora Shaw**, **Pamela Siller**,

and **David Wilcox** will testify to the lack of a comprehensive, cohesive mitigation

investigation plan; and **Arthur Hanratty** will testify that he was not assigned any

investigative tasks by counsel.

**Claim 17:     Counsel were ineffective for failing to object to statutorily unauthorized victim impact testimony of Smith's mother-in-law, Sandra Plinski.**

Johnson requests discovery and an evidentiary hearing in support of his Claim that

trial counsel were ineffective for failing to object to the victim impact testimony of

Sandra Plinski. This Claim was procedurally defaulted, but the ineffective assistance of

counsel that Johnson received during his state postconviction proceedings in failing to

present this substantial Claim provides cause for the default and establishes prejudice.

*See Martinez*, 566 U.S. at 17.

**1.  Discovery (Rule 6)**

Johnson requires the assistance of the Court in obtaining information in support of

his Claim. He has made credible allegations of a constitutional violation and thus has

shown good cause for this request. *See Bracy*, 520 U.S. at 904, 908–09. Accordingly, he

moves for court orders for the following requests.

**Depositions of Robert Storrs and Nathanial Carr:** Storrs and Carr can speak to their failure to object to Sandra Plinski's testimony and lack of reasonable trial strategy.

### 2. Evidentiary Hearing (Rule 8)

At an evidentiary hearing on Claim 17, Johnson will present witnesses and testimony including, but not limited to, **Roberts Storrs** and **Nathaniel Carr**, who will testify to their failure to object to Sandra Plinski's inadmissible victim impact statement.

**Claim 19:   The imposition of the death penalty on persons twenty-one and younger at the time of the offense constitutes cruel and unusual punishment.**

Johnson requests discovery, expansion of the record, and an evidentiary hearing in support of his Claim that executing a person who was twenty-one years old or younger at the time of their offense constitutes cruel and unusual punishment. This Claim was not presented in state court because it was previously unavailable.

### 1. Discovery (Rule 6)

Johnson requires the assistance of the Court in obtaining information in support of his Claim. He has made credible allegations of a constitutional violation and thus has shown good cause for this request. *See Bracy*, 520 U.S. at 904, 908–09. Accordingly, he moves for court orders for the following requests.

**Deposition of David Fassler, M.D.:** Dr. David Fassler is a child and adolescent psychiatrist, who reviewed Johnson's medical, mental health, educational, and correctional records. Dr. Fassler can speak to Johnson's history of lead exposure, physical abuse, sexual abuse, head injury, substance abuse, frontal lobe and executive functioning, and auditory hallucinations.

45

**Depositions of Robert Storrs and Nathaniel Carr:** Storrs and Carr can address cause to overcome any procedural default because there was no medical, legal, or societal consensus as to this Claim available to counsel at the time of trial.

## 2. Expansion of the Record (Rule 7)

Johnson requests expansion of the record to include the relevant exhibits below.

**Ex. 60 (ECF No. 20-32) Johnson's birth certificate:** This document is relevant to show that Johnson was under twenty-one years old at the time of the offense.

**Ex. 61 (ECF No. 21-1) Declaration of Dr. David Fassler:** Dr. Fassler's declaration is relevant to Johnson's Claim, because he opines that Johnson was exposed to factors that led to impaired and delayed brain development.

## 3. Evidentiary Hearing (Rule 8)

At an evidentiary hearing on Claim 19, Johnson will present witnesses and testimony including, but not limited to, **Dr. David Fassler**, who will testify that Johnson's brain development was impaired and delayed; and **Robert Storrs** and **Nathaniel Carr** will testify that this Claim was not reasonably available to them at the time of Johnson's trial based on the state of medical, legal, and societal studies on brain development.

/ / /

/ / /

/ / /

**Claim 20:    Trial counsel were ineffective for failing to timely object, move to strike, move for a mistrial, and seek a curative instruction when evidence of other homicide charges and speculation that Johnson's self-inflicted scars marked prior assaults were introduced during the penalty phase.**

Johnson requests discovery, expansion of the record, and an evidentiary hearing in support of his Claim that trial counsel provided ineffective assistance of counsel in failing to timely object or take any other remedial action when the jury heard testimony relating to other homicide charges, and speculation that self-inflicted scars signified prior assaults. This Claim was procedurally defaulted, but the ineffective assistance of counsel that Johnson received during his state postconviction proceedings in failing to present this substantial Claim provides cause for the default and establishes prejudice. *See Martinez*, 566 U.S. at 17.

### 1. **Discovery (Rule 6)**

Johnson requires the assistance of the Court in obtaining information in support of his Claim. He has made credible allegations of a constitutional violation and thus has shown good cause for this request. *See Bracy*, 520 U.S. at 904, 908–09. Accordingly, he moves for court orders for the following requests.

**Depositions of Robert Storrs & Nathanial Carr:** Storrs and Carr can speak to the lack of reasonable trial strategy for failing to timely object or take any curative measures when the jury heard prejudicial testimony.

### 2. **Expansion of the Record (Rule 7)**

Johnson requests expansion of the record to include the following relevant exhibit.

47

**Ex. 65 (ECF No. 21-5)** *United States v. Johnson*, **CR-00-72-PHX-RGS:** Johnson was acquitted of an unrelated murder charge; therefore, testimony about this charge was improper and prejudicial "other acts" evidence.

### 3. **Evidentiary Hearing (Rule 8)**

At an evidentiary hearing on Claim 20, Johnson will present witnesses and testimony including, but not limited to, **Robert Storrs** and **Nathaniel Carr** who will testify to their ineffective assistance in failing to object or request a curative instruction for the prejudicial testimony presented by the State.

**Claim 21:     Trial counsel erred in not seeking a mistrial after arguing the grand jury indictment was deficient because the grand jury did not consider any of the aggravating circumstances.**

Johnson requests discovery and an evidentiary hearing in support of his Claim that trial counsel provided ineffective assistance in failing seek a mistrial based on the deficient grand jury indictment. This Claim was procedurally defaulted, but the ineffective assistance of counsel that Johnson received during his state postconviction proceedings in failing to present this substantial Claim provides cause for the default and establishes prejudice. *See Martinez*, 566 U.S. at 17.

### 1. **Discovery (Rule 6)**

Johnson requires the assistance of the Court in obtaining information in support of his Claim. He has made credible allegations of a constitutional violation and thus has shown good cause for this request. *See Bracy*, 520 U.S. at 904, 908–09. Accordingly, he moves for court orders for the following requests.

48

**Depositions of Robert Storrs & Rick Tosto:** Storrs and Tosto can speak to the lack of reasonable trial strategy for the errors enumerated in this Claim, including failing to challenge the deficiency in the grand jury proceedings.

## 2. **Evidentiary Hearing (Rule 8)**

At an evidentiary hearing on Claim 21, Johnson will present witnesses and testimony including, but not limited to, **Robert Storrs** and **Rick Tosto**, who will testify to their ineffectiveness in failing to challenge the deficient grand jury indictment.

**Claim 25:    Appellate counsel was ineffective.**

Johnson requests discovery and an evidentiary hearing in support of his Claim that appellate counsel was ineffective. Johnson exhausted this Claim in state court.

## 1. **Discovery (Rule 6)**

Johnson requires the assistance of the Court in obtaining information in support of his Claim. He has made credible allegations of a constitutional violation and thus has shown good cause for this request. *See Bracy*, 520 U.S. at 904, 908–09. Accordingly, he moves for court orders for the following request.

**Deposition of Kerrie Droban:** Johnson seeks to depose Kerrie Droban, who was appointed as his appellate attorney. Droban can speak to the lack of reasonable appellate strategy for the errors enumerated in this Claim, the lack of preparation and investigation conducted, her failure to appeal clearly erroneous decisions by trial counsel, and her failure to raise and preserve constitutional challenges.

/ / /

/ / /

49

1.  **Evidentiary Hearing (Rule 8)**

At an evidentiary hearing on Claim 25, Johnson will present witnesses and testimony including, but not limited to, **Kerrie Droban**, who will testify as to her ineffectiveness in presenting Johnson's direct appeal.

**Claim 26:    Trial counsel erred by conceding Johnson's death eligibility in violation of *McCoy v. Louisiana*. Direct appeal counsel erred by conceding Johnson's guilt, also in violation of *McCoy*.**

Johnson requests discovery, expansion of the record, and an evidentiary hearing in support of his Claim that trial and appellate counsel were ineffective in conceding Johnson's death eligibility and guilt. This Claim was procedurally defaulted, but the ineffective assistance of counsel that Johnson received during his state postconviction proceedings in failing to present this substantial Claim provides cause for the default and establishes prejudice. *See Martinez*, 566 U.S. at 17.

1.  **Discovery (Rule 6)**

Johnson requires the assistance of the Court in obtaining information in support of his Claim. He has made credible allegations of a constitutional violation and thus has shown good cause for this request. *See Bracy*, 520 U.S. at 904, 908–09. Accordingly, he moves for court orders for the following requests.

**Depositions of Robert Storrs & Nathanial Carr:** Storrs and Carr can speak to the lack of reasonable trial strategy, including counsels' decision to inform the jury Johnson was death-eligible.

**Deposition of Kerrie Droban:** Droban can speak to the lack of reasonable appellate strategy, including counsel's decision to concede Johnson's guilt, over Johnson's objection.

### 2. Expansion of the Record (Rule 7)

Johnson requests expansion of the record to include the following relevant exhibit.

**Ex. 69 (ECF No. 21-9) Appellant's "Demand to Withdraw Counsel for Conflict of Interest":** Johnson filed this motion requesting appellate counsel withdraw from his case, arguing that Droban had not communicated with him and was not representing his interests. This document is relevant to Johnson's Claim that appellate counsel lacked a reasonable strategy on appeal in conceding Johnson's guilt.

### 3. Evidentiary Hearing (Rule 8)

At an evidentiary hearing on Claim 26, Johnson will present witnesses and testimony including, but not limited to, **Roberts Storrs, Nathaniel Carr,** and **Kerrie Droban** who will testify to their decision to concede Johnson's guilt and death-eligibility.

**Claim 27:** **Trial counsel were ineffective for failing to request an instruction to caution the jury that multiple witnesses' testimony should be examined with greater caution due to receipt of government benefits**

Johnson requests discovery, expansion of the record, and an evidentiary hearing in support of his Claim that trial counsel provided ineffective assistance for failing to advise the jury that the testimony of multiple witnesses should be considered with greater caution because they received government benefits. This Claim was procedurally defaulted, but the ineffective assistance of counsel that Johnson received during his state

postconviction proceedings in failing to present this substantial Claim provides cause for the default and establishes prejudice. *See Martinez*, 566 U.S. at 17.

### 1. **Discovery (Rule 6)**

Johnson requires the assistance of the Court in obtaining information in support of his Claim. He has made credible allegations of a constitutional violation and thus has shown good cause for this request. *See Bracy*, 520 U.S. at 904, 908–09. Accordingly, he moves for court orders for the following requests.

**Deposition of Robert Storrs, Rick Tosto, & Nathaniel Carr:** Storrs, Tosto, and Carr can speak to the lack of reasonable trial strategy for their failure to request a cautionary instruction for incentivized contract witness testimony.

### 2. **Expansion of the Record (Rule 7)**

Johnson requests expansion of the record to include the relevant exhibits below.

**Exs. 71 & 72 (ECF Nos. 21-11 & 21-12) Ninth Circuit Model 4.9:** These two instructions are the Ninth Circuit's pattern jury instructions for witnesses who have received government benefits. The jury instruction is relevant to Johnson's case because counsel had pattern instructions that should have been requested.

### 3. **Evidentiary Hearing (Rule 8)**

At an evidentiary hearing on Claim 27, Johnson will present witnesses and testimony including, but not limited to, **Robert Storrs**, **Rick Tosto**, and **Nathaniel Carr** who will testify as to why they did not request an instruction on weighing the testimony of witnesses who have received a benefit.

52

**Claim 28:     Trial counsel were ineffective for failing to challenge the handwriting analysis offered by the prosecution.**

Johnson requests discovery, expansion of the record, and an evidentiary hearing in support of his Claim that trial counsel were ineffective for failing to challenge the handwriting analysis. This Claim was procedurally defaulted, but the ineffective assistance of counsel that Johnson received during his state postconviction proceedings in failing to present this substantial Claim provides cause for the default and establishes prejudice. *See Martinez*, 566 U.S. at 17.

**1.  Discovery (Rule 6)**

Johnson requires the assistance of the Court in obtaining information in support of his Claim. He has made credible allegations of a constitutional violation and thus has shown good cause for this request. *See Bracy*, 520 U.S. at 904, 908–09. Accordingly, he moves for court orders for the following requests.

**Depositions of Robert Storrs, Rick Tosto, & Nathaniel Carr:** Storrs, Tosto, and Carr can speak to the lack of reasonable trial strategy for their failure to challenge the State's handwriting expert or engage a defense handwriting expert.

**2.  Expansion of the Record (Rule 7)**

Johnson requests expansion of the record to include the following relevant exhibit.

**Ex. 75 (ECF No. 21-15) Report of Professor Mark Denbeaux, J.D.:** Professor Denbeaux is an expert on the limitations of forensic evidence. Denbeaux contends that if trial counsel consulted with a forensic evidence expert, the testimony of the State's handwriting expert would have been excluded or given no weight by the jury.

53

Denbeaux's report is significant to Johnson's Claim because it shows counsel was ineffective for failing to call an expert.

### 3. Evidentiary Hearing (Rule 8)

At an evidentiary hearing on Claim 28, Johnson will present witnesses and testimony including, but not limited to, **Robert Storrs**, **Rick Tosto**, and **Nathaniel Carr** who will testify regarding their failure to challenge the State's handwriting expert or call an expert of their own.

**Claim 29:   Significant portions of the trial proceedings were not recorded.**

Johnson requests discovery and an evidentiary hearing in support of his Claim that trial counsel provided ineffective assistance in failing to ensure all portions of the trial proceedings were recorded. This Claim was procedurally defaulted, but the ineffective assistance of counsel that Johnson received during his state post-conviction proceedings in failing to present this substantial Claim provides cause for the default and establishes prejudice. *See Martinez*, 566 U.S. at 17.

### 1. Discovery (Rule 6)

Johnson requires the assistance of the Court in obtaining information in support of his Claim. He has made credible allegations of a constitutional violation and thus has shown good cause for this request. *See Bracy*, 520 U.S. at 904, 908–09. Accordingly, he moves for court orders for the following requests.

**Depositions of Robert Storrs, Rick Tosto, & Nathanial Carr:** Storrs, Tosto, and Carr can speak to the lack of reasonable trial strategy in their failure to challenge the absence of a complete record, and can reconstruct the unrecorded portions of trial.

54

2. **Evidentiary Hearing (Rule 8)**

At an evidentiary hearing on Claim 29, Johnson will present witnesses and testimony including, but not limited to, **Robert Storrs, Rick Tosto,** and **Nathaniel Carr,** who will address their failure to raise this Claim and can reconstruct the unrecorded portions of trial.

**Claim 30 (D) & (E):  Arizona's capital sentencing scheme is unconstitutional.**

Johnson is asking for expansion of the record in support of his Claim that Arizona's capital sentencing scheme is unconstitutional, because Arizona does not set forth objective standards to guide the sentence in weighing the aggravating circumstances against the mitigating circumstances, (Claim 30(D)), and Arizona's "heinous, cruel, or depraved" aggravating circumstance is vague and fails to channel the sentencer's discretion, (Claim 30(E)). Johnson exhausted a portion of this Claim in state court. To the extent any subsection of Claim 30 is unexhausted, any default is due to the ineffective assistance of counsel that Johnson received during his state post-conviction proceedings, which provides cause for the default and establishes prejudice. *See Martinez*, 566 U.S. at 17.

1. **Discovery (Rule 6)**

Johnson requires the assistance of the Court in obtaining information in support of his Claim. He has made credible allegations of a constitutional violation and thus has shown good cause for this request. *See Bracy*, 520 U.S. at 904, 908–09. Accordingly, he moves for court orders for the following requests.

55

**Subpoena Duces Tecum to the County Attorney's Office of each Arizona County:** For Claim 30 (D), Johnson requests the following information for each crime charged as a first degree murder from 2000 onward: the date and facts of the crime, case number, defendant's name, charges brought, whether the death penalty was sought, aggravating circumstances alleged, disposition, and sentence imposed. For Claim 30(E), Johnson requests the following information for each crime charged as a first degree murder from 2000 onward in which the "especially heinous" aggravating circumstance was noticed: the date and facts of the crime, case number, defendant's name, charges brought, other aggravating circumstances alleged, aggravating circumstances found (if any), sentence imposed, and information from special verdict forms (if any).

**Claim 37:   Executing Johnson after more than fifteen years on death row is unconstitutional.**

Johnson requests discovery and an evidentiary hearing in support of his Claim that executing him after more than fifteen years on death row is unconstitutional. Johnson exhausted this Claim in state court.

### 1. <u>Discovery (Rule 6)</u>

Johnson requires the assistance of the Court in obtaining information in support of his Claim. He has made credible allegations of a constitutional violation and thus has shown good cause for this request. *See Bracy*, 520 U.S. at 904, 908–09. Accordingly, he moves for court orders for the following requests.

**Deposition of David Shinn:** David Shinn is the Director of the Arizona Department of Corrections. Shinn can address the conditions of death row in Arizona.

**Deposition of Jeff Van Winkle:** Jeff Van Winkle is the Warden of Arizona Prion Complex—Florence, where Johnson is housed. Van Winkle can address the conditions of death row, and the conditions of Johnson's housing specifically.

## 2. **Evidentiary Hearing (Rule 8)**

At an evidentiary hearing on Claim 37, Johnson will present witnesses and testimony including, but not limited to, **David Shinn** and **Jeff Van Winkle** on the conditions of death row and Johnson's life on death row.

## IV. **CONCLUSION**

For the foregoing reasons, Johnson requests that the Court grant his requests for discovery, expansion of the record, and an evidentiary hearing. He has been diligent, is not barred by AEDPA or other legal authority from presenting new evidence, and should be allowed to provide additional support for his constitutional claims and his *Martinez* arguments.

Respectfully submitted this 16th day of December, 2019.

Respectfully submitted
RENE L. VALLADARES
Federal Public Defender

*/s/ Brad D. Levenson*
BRAD D. LEVENSON
Assistant Federal Public Defender

*/s/ Stacy M. Newman*
STACY M. NEWMAN
Assistant Federal Public Defender

**CERTIFICATE OF SERVICE**

I hereby certify that on December 16, 2019, I electronically filed the foregoing **Notice of Request for Evidentiary Development** with the Clerk's Office by using CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by CM/ECF system.

Laura P. Chiasson
Assistant Attorney General
Laura.Chiasson@azag.gov

/s/ Sara Jelinek
An Employee of the
Federal Public Defenders Office